ARWIN GREENWALD et al., Appellants, *v.* FRANK M. ZYVITH, Respondent.

Second Department, May 10, 1965.

*Alan Kahn* for appellants.

*William T. Ryan* and *Walter C. Marshall* for respondent.

*Per Curiam.* In a negligence action to recover damages for injury to person and property, the plaintiffs appeal from an order of the Supreme Court, Nassau County, which denied their motion to vacate a prior order and judgment of that court, dismissing plaintiffs' action for failure to serve a complaint.

In May, 1960 plaintiffs suffered personal injuries and other

damages when an automobile in which they were passengers was struck in the rear by defendant's car. Plaintiffs retained an attorney whom we shall call the "attorney of record." He failed to obtain a settlement from defendant's insurer and referred the matter to another attorney whom we shall call "trial counsel." In December, 1961 trial counsel caused a summons to be served; and in the same month defendant served a notice of appearance. Trial counsel thereafter attempted, unsuccessfully, to settle the action. In May, 1962 trial counsel sent plaintiffs a complaint which plaintiffs verified and returned to him. The complaint, however, was never served.

In September, 1963 defendant moved to dismiss the action because of plaintiffs' failure to serve a complaint. Trial counsel obtained three adjournments of defendant's motion. On the final adjourned day, however, such counsel failed to appear in person or to file papers in opposition. In December, 1963 defendant's motion to dismiss was granted; and in January, 1964 judgment was entered dismissing the action. In September, 1964 the attorney of record informed the plaintiffs that their complaint had not been served and that the action had been dismissed.

In December, 1964 the attorney of record moved to vacate the order and judgment of dismissal. In support of the motion, trial counsel candidly alleged that he had negligently failed to serve the complaint and was unable to offer any explanation for his conduct. Trial counsel further admitted having repeatedly lied to the attorney of record concerning the progress of the action, as follows:

"[T]he attorney of record for the plaintiffs made scores of attempts to contact me with regard to this case. Because I was concerned about the conduct of this case, I avoided most of [his] correspondence and telephone calls. However, I did indicate to him that this matter was proceeding in its normal course and that the complaint had been served and that issue had been joined and that in the normal course of the calendar in this Court, this action would be reached for trial.

"[The attorney of record] had absolutely no knowledge of the default on the aforesaid motion and as a matter of fact, was advised by me that the motion had been denied.

"[The attorney of record] continued to make repeated inquiries of me with regard to this matter and I persisted in my refusal to meet with [him] or speak with him regarding this case.

"Finally at [the attorney of record's] insistence I met with him at his office during the latter part of September, 1964, and

then, for the first time, told him the truth of what had transpired with regard to this file."

In opposition to plaintiffs' motion to vacate the above order and judgment, defendant's counsel alleged that his records did not show that trial counsel represented the plaintiffs. In addition, his records revealed that his September, 1963 motion, as well as copies of the subsequent order and judgment of dismissal, had been served by mail on the attorney of record.

In our opinion, Special Term's order denying plaintiffs' motion should be affirmed. Plaintiffs failed to establish a reasonable excuse or justification for their delay in serving their complaint (*Keating* v. *Smith*, 20 A D 2d 141). Such delay on the part of a plaintiffs' attorney of record or trial counsel is and should be imputed to the plaintiffs. If the rule were otherwise, plaintiffs would rarely suffer a dismissal. It would be the very unusual case where the plaintiff himself could be personally implicated in his attorney's delay (*Sortino* v. *Fisher*, 20 A D 2d 25, 29). So it is that, as between innocent defendants and innocent plaintiffs, it is just to burden plaintiffs because of their agents' inaction (*Gallagher* v. *City of New York*, 19 A D 2d 623; *Nocella* v. *City of New York*, 18 A D 2d 1015) and to leave the plaintiffs to whatever remedies the law may provide against negligent counsel (cf. *Hamilton* v. *Dannenberg*, 239 App. Div. 155; see Attorney Malpractice, 63 Col. L. Rev. 1292).

Though we thus dispose of the immediate legal issue before us, we are constrained to go further and address ourselves briefly to the larger question of the role of an attorney of record. We do so recognizing that, particularly in the practice of negligence law, contingent fee agreements and congested court calendars may encourage apathy in attorneys of record and thus inhibit the exercise of their duties of vigilance and review. We cannot too often or with too great emphasis caution the Bar concerning the performance of these primal duties, for the failure to discharge them strips an attorney of record of his ostensible professional role and exposes him to the grave inquiry whether he has, in fact, acted as a common broker trafficking in a personal injury claim.

Canon 34 of the Canons of Professional Ethics, adopted by the American Bar Association, is explicit. It provides that: "No division of fees for legal services is proper, except with another lawyer, based upon a division of service or responsibility." This canon is designed, in part, to keep the profession of law from becoming an ordinary business. It gives substance to the admonition of canon 12 that " the profession is a branch of the administration of justice and not a mere money-

getting trade." Canon 34 thus condemns both the "finder's fee", payable regardless of the service performed or responsibility assumed by a forwarding lawyer, as well as the unearned divided fee, taken by an attorney who has assumed the role of an "attorney of record" but who, in fact, has neither rendered service nor assumed responsibility in the handling of the case (Drinker, Legal Ethics [1953 ed.] 186).

Because of the manifold interests they serve and the unique trust reposed in them by society, attorneys at law, like physicians, bear special relationships to their clients which the Canons of Professional Ethics are designed to sustain and protect. Although the canons are not statutes, they nevertheless establish standards of professional conduct which attorneys are expected to observe, not by their leave, but from necessity (cf. *Matter of Connelly*, 18 A D 2d 466).

Accordingly, we have referred the record before us to the appropriate authority in order that an inquiry may be undertaken into the conduct of plaintiffs' attorney of record and trial counsel.

BELDOCK, P. J., UGHETTA, CHRIST, BRENNAN and HOPKINS, JJ., concur.

Order affirmed, with $10 costs and disbursements.