In the Matter of GERALD KAISER (Admitted as JERRY KAISER), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, May 30, 1985

**APPEARANCES OF COUNSEL**

*Claudio B. Bergamasco* of counsel (*Michael A. Gentile,* attorney), for petitioner.

*Gerald Kaiser,* respondent *pro se.*

**OPINION OF THE COURT**

Per Curiam.

Petitioner, Departmental Disciplinary Committee (DDC) for the First Judicial Department, moves for: (1) an order, pursuant to section 603.4 (d) of the Rules Governing the Conduct of Attorneys in the Appellate Division, First Judicial Department (Rules) (22 NYCRR 603.4 [d]), confirming a report of a Hearing Panel (Panel), which includes findings of fact, conclusions of law, and a recommendation that respondent Gerald Kaiser, who was admitted under the name Jerry Kaiser (respondent), be disbarred from the practice of law; and, (2) an order, pursuant to section 603.13 (g) of the Rules (22 NYCRR 603.13 [g]) (which is entitled: Appointment of attorney to protect clients' interests and interests of disbarred or suspended or resigned attorney), appointing the Office of the Chief Counsel of the DDC to inventory respondent's files and protect the interests of respondent's

clients, including taking temporary possession of such files. In response to DDC's motion, respondent cross-moves: (1) to dismiss the petition served and filed by DDC "upon the grounds that said Petition is predicated on Findings of Facts [*sic*] and Conclusions of Law which are inconsistent with the weight of evidence adduced in the course of the Hearing before the Hearing Panel, and for [the] reason that the \* \* \* Hearing was conducted contrary to the Rules and Procedures of the Departmental Disciplinary Committee, and that the Office of the Chief Counsel violated the Committee Rule with respect to giving respondent proper timely notice"; and (2) for oral argument.

Respondent was admitted to practice in the Second Judicial Department, on June 19, 1963, and he maintained an office for the practice of law within the First Judicial Department during the period covered by the charges.

These disciplinary proceedings were commenced, on or about March 1, 1984, by DDC's service upon respondent of a Statement of Charges (Statement). Shortly thereafter, on March 19, 1984, the DDC served respondent with a new Statement of Charges, which varied only slightly from the prior Statement.

The March 19, 1984 Statement contains five charges.

Charge one alleges that the respondent engaged in: (a) conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of DR 1-102 (A) (4) of the Code of Professional Responsibility; (b) conduct that is prejudicial to the administration of justice, in violation of DR 1-102 (A) (5); and (c) conduct that adversely reflects on respondent's fitness to practice law, in violation of DR 1-102 (A) (6). In substance, the DDC contends, under this charge, that respondent, in a 1981 personal bankruptcy proceeding described *infra,* caused certain transfers of his funds to be made with the actual intent to hinder, delay and defraud existing and future creditors; and that, in 1978, respondent converted to his own use $15,000 in escrow funds.

Charge two alleges that the respondent violated DR 1-102 (A) (4), (6). In substance, the DDC contends, under this charge, that, in 1981, respondent again converted to his own use $6,065.51 in escrow funds.

Charge three alleges that the respondent violated DR 1-102 (A) (4), (5), (6). In substance, the DDC contends under this charge, that, in 1974, respondent, as an attorney, knowingly prepared a false answer to a complaint in a foreclosure proceeding.

Charge four alleges that respondent violated DR 1-102 (A) (4), (5), (6). In substance, the DDC contends under this charge, that,

in 1982, respondent, during the course of his own bankruptcy proceeding, knowingly made various false statements in his amended bankruptcy petition and schedules.

Charge five alleges that the respondent: (a) engaged in misconduct involving withdrawal from his legal practice in violation of DR 2-110 (A) (2); (b) failed to carry out contracts of employment entered into with clients in violation of DR 7-101 (A) (2); and (c) engaged in conduct that adversely reflects on his fitness to practice law in violation of DR 1-102 (A) (6). In substance, the DDC contends, under this charge, that in 1983, respondent improperly disposed of his law practice.

Subsequently, in April 1984, respondent served an undated answer to these five charges. In substance, this answer denied the charges and asserted an affirmative defense, which in effect alleged that the DDC had violated the published *Rules and Procedures of the Departmental Disciplinary Committee* (DDC Rules), particularly in regard to giving respondent sufficient notice relating to the institution of charges. Even though respondent raised this issue about proper notice, he did not claim that it prejudiced him in preparing this answer.

The hearing, concerning the charges, began on June 14, 1984, before the Panel. It took 13 sessions and concluded on January 10, 1985. Over the course of these sessions, the DDC presented both testimonial and documentary evidence against the respondent. In defense, the respondent presented evidence, in the form of testimony, including his own, and documents. The transcript contains in excess of 1,400 pages.

At the second hearing on June 21, 1984, the DDC amended charge four, mentioned *supra,* to add an allegation that respondent, in his bankruptcy proceeding, had also submitted false information relating to alleged debts owed to two postpetition creditors. Since this amendment was made at the second of 13 hearings, we find that respondent had ample time to prepare a defense, and, in fact, respondent does not offer any meritorious argument that would support the conclusion that he was prejudiced by it.

After all of the evidence had been received, the Panel, unanimously, sustained: (a) that part of charge one which dealt with conversion; (b) charge two; (c) charge three; (d) that part of charge four, which dealt with respondent making certain false statements under oath in his bankruptcy proceeding, mentioned *supra;* and (e) charge five. As to the remaining charges, the Panel dismissed them. Furthermore, the Panel, unanimously,

reprimanded the respondent and recommends that he be disbarred.

In substance, set forth *infra,* are the details of the Panel's findings of guilt of professional misconduct against the respondent.

Charge one, paragraph A (2) (a) (the Pilevsky matter). The Panel sustained this charge, upon the following evidence. On June 30, 1978, respondent's wife executed a contract of sale (contract) to sell a parcel of real property she owned, at Harbour View West, Lawrence, New York, to Philip and Renee Pilevsky (Pilevsky). The respondent represented his wife in this transaction. Paragraph two of this contract set a purchase price of $150,000, inclusive of a $15,000 down payment *"to be held in escrow by seller's attorney [respondent] until closing"* (emphasis added). The purchasers Pilevsky paid this $15,000 down payment by check drawn payable to the respondent as the seller's attorney. Instead of depositing this check into his escrow account, respondent used the funds represented by it as a down payment on a house that respondent and his wife were then buying in Florida. When the respondent was asked by the purchasers' attorney, between the time that this contract was signed and prior to closing, whether the $15,000 had been deposited in an escrow account, the respondent falsely insisted that it was in escrow. At the closing on this property in July 1979, the respondent credited the purchasers with the $15,000 that he had converted more than a year earlier.

Charge two (the Buhl matter). The Panel sustained this charge, upon the following evidence. On August 6, 1981, the respondent converted to his own use the sum of $6,065.51, which he had received from Siegfried Buhl (Buhl), a client of respondent's firm, for the specific purpose of offering that money in settlement negotiations with the holder of the mortgage on property owned by Buhl, located at 765 Ninth Avenue, New York County. Respondent has never accounted to Buhl with respect to this money.

Charge three (the Hodas matter). The Panel sustained this charge, upon the following evidence. In 1970, respondent's wife executed a mortgage in favor of Martin Hodas (Hodas) in the amount of $20,000, on the property later sold to Pilevsky, discussed *supra.* Since no payments had been made under the $20,000 mortgage, in 1974, Hodas commenced a foreclosure action against the subject property in the Supreme Court, Nassau County, so that the subject property could be sold to satisfy his mortgage. The respondent acted as attorney for his wife in

this foreclosure action, and prepared an answer on her behalf, dated April 24, 1974. In paragraphs 5 through 10 of this answer, respondent knowingly and falsely alleged as an affirmative defense that the $20,000 mortgage had been executed by respondent's wife solely because of threats of extortion and physical violence made by Hodas against respondent, and for no other consideration whatsoever. The true reason that this $20,000 mortgage had been given to Hodas was that respondent desired to borrow more money from him, but Hodas, on the advice of his counsel, would not consider a further loan unless an unpaid prior $20,000 loan was secured by the said mortgage. Incidentally, all loans of Hodas to respondent were paid back when the subject property was later sold in 1979 to Pilevsky.

Charge four, paragraph 1 (a) and (d) (the respondent's bankruptcy proceeding). The Panel sustained this charge, upon the following evidence. On February 11, 1981, respondent filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York. In that bankruptcy proceeding, respondent: (a) knowingly made false sworn statements in his 1982 amended petition with respect to his domicile; and (b) knowingly made false oaths, relating to debts owed to two postpetition creditors, in supplemental schedule A-3, filed on October 12, 1982. This proceeding was heard by Bankruptcy Judge Joel Lewittes. On January 14, 1983, Judge Lewittes issued a decision, which denied the respondent's discharge in bankruptcy. This decision, *inter alia,* found that respondent had made the false statements, mentioned *supra.* Judge Lewittes' decision was affirmed on appeal by the United States District Court for the Southern District of New York (32 Bankr Rep 701); and, was then, unanimously affirmed by the United States Court of Appeals for the Second Circuit (722 F2d 1574).

Charge five (sale of practice). The Panel sustained this charge, upon the following evidence. On November 22, 1983, respondent entered into a written agreement with Eunice Becker, Esq. (Becker), and Jan H. Brown, Esq. (Brown), to transfer all the files of his clients in New York and the good will of respondent's firm to Becker and Brown's law firm. In consideration for the transfer of respondent's practice, Becker and Brown agreed to pay respondent $20,000. However, this monetary consideration was not set forth in the written agreement. Thereafter, on November 23, 1983, the respondent's case files were turned over to Becker and Brown, without the prior knowledge or consent of respondent's clients, and respondent then closed his New York office. The first notification that respondent's clients received, informing them of the transfer of their files, was from the office

of Becker and Brown. In view of these actions of respondent in respect to the disposal of his practice, the Panel found the respondent guilty of engaging in conduct involving withdrawal from his legal practice in violation of DR 2-110 (A) (2), failing to carry out contracts of employment entered into with clients in violation of DR 7-101 (A) (2), and engaging in conduct that adversely reflects on his fitness to practice law in violation of DR 1-102 (A) (6).

The Panel, in addition to sustaining the charges, discussed *supra*, saw fit to make this observation about the respondent's general lack of candor before them: "Respondent's testimony was often evasive, inconsistent, contrary to the testimony of staff's [DDC's] witnesses * * * contrary to respondent's prior testimony in his bankruptcy proceeding and contrary to his [respondent] own prior writings and documents".

Our review of the record convinces us that overwhelming evidence, both testimonial and documentary, supports the findings of the Panel: (1) as to the charges that were sustained, and (2) as to the respondent's lack of forthrightness.

Following our examination of the respondent's moving papers and memorandum of law in support of his cross motion to dismiss the petition, we find that they fail to contain any meritorious arguments that would lead to a conclusion: (a) that the Panel's findings were against the weight of the evidence, and (b) that there were any procedural irregularities, pertaining to such things as timely notice, the recusal of the original Chairman of the Panel and his replacement, and section 5.18 of the DDC Rules, entitled: "Quorum and manner of acting", that denied respondent's right to due process.

We deny respondent's application to orally argue, since his position has already been fully presented to us in his moving papers.

Respondent is approximately 50 years old, has practiced law for 22 years, and has no prior disciplinary record in this State. Nevertheless, considering respondent's pattern of continuing misconduct, extending over a number of years, which includes sustained charges of two instances of conversion of funds, knowingly submitting false documents in various court proceedings, and improperly selling his law practice, we approve the Panel's recommendation of disbarment.

Based upon this record, respondent's "conduct demonstrates his utter lack of minimal professional character" (*Matter of Farrell*, 27 AD2d 61, 62 [1st Dept], *lv denied* 20 NY2d 861).

In the petition in support of the DDC's motion to confirm the Panel's recommendation, William E. Jackson (Jackson), Chairman of the DDC, states, in pertinent part, that: "In order to protect the interests of his clients, the Office of the Committee's Chief Counsel should be appointed to inventory respondent's files including taking temporary possession of said files. Such relief is especially warranted in this instance since the record of this proceeding revealed that respondent on at least two prior occasions sold his practice to other attorneys. The Hearing Panel in fact sustained Charge Five which was based upon respondent's improper transfer of clients' files, for monetary consideration, to the law firm of Billet, Becker & Brown. Respondent also sold his Florida practice to the firm of Wiggins and Wiggins, as evidenced by a written agreement, dated January 10, 1984, and signed by respondent, which expressly characterized the transaction as a 'Sale of Practice' ". We find overwhelming evidence in the record to support this request of Mr. Jackson, and we therefore grant it.

Accordingly, the motion of the petitioner is granted: (a) to confirm the Panel's report in its entirety, and (b) to appoint the Office of the DDC's Chief Counsel to inventory respondent's files, including taking temporary possession of such files; the respondent's cross motion is denied in its entirety; and it is ordered: (a) that respondent is disbarred and his name stricken from the roll of attorneys and counselors-at-law, and (b) that the Office of DDC's Chief Counsel is appointed to inventory respondent's files, including taking temporary possession of such files.

KUPFERMAN, J. P., ROSS, ASCH, MILONAS and KASSAL, JJ., concur.

Cross motion to dismiss petition, and for other relief, denied in its entirety, the petition granted, respondent's name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective July 1, 1985, and petitioner's Chief Counsel appointed to inventory respondent's files, as indicated in the order of this court.