■ ANDRE CHERY, Appellant, v NEVILLE ANTHONY, Respondent.—In an action for a judgment declaring that a deed executed by the plaintiff be deemed a mortgage and to cancel the same upon the ground that the underlying loan is usurious, the plaintiff appeals from an order of the Supreme Court, Nassau County (Lockman, J.), dated February 1, 1989, which denied his motion to vacate (1) an order of the same court, dated April 20, 1987, which granted the defendant's motion to dismiss the complaint upon his default in opposing the motion, and (2) a judgment of the same court, entered May 3,

1988, which is in favor of defendant and against the plaintiff on the defendant's counterclaim to recover damages for fraud upon his default in serving a reply to the counterclaim.

Ordered that the order is affirmed, with costs.

In or about April 1986 the plaintiff commenced this action for a judgment declaring that an instrument of conveyance from the plaintiff to the defendant is a mortgage rather than a deed, and to cancel the same upon the ground that the underlying loan is usurious. On September 5, 1986, the defendant served an amended answer which interposed a counterclaim to recover damages for the plaintiff's allegedly fraudulent written representation that there were only two recorded mortgages affecting the premises in question, when there was also a third recorded mortgage in the sum of $145,000.

Over the next 1½ years, the plaintiff's attorney repeatedly neglected to prosecute his claim and to defend against the defendant's counterclaim. The attorney failed to serve a reply to the defendant's counterclaim, and to respond to the defendant's discovery demands. On November 14, 1986, a preliminary conference order was issued, directing the plaintiff to supply requested discovery material and a bill of particulars on or before December 4, 1986. The plaintiff failed to comply. On December 10, 1986, at the court's direction, the plaintiff's counsel was contacted at his office by the defendant's attorney and advised over the telephone that he was in default of the preliminary conference order. The plaintiff's counsel promised to forward the material immediately. He never did. By order dated January 23, 1987, the court granted the defendant's motion to strike the plaintiff's pleadings for failure to comply with the preliminary conference order, unless the plaintiff complied within 20 days from the date of service of the January 23, 1987, order upon him. The plaintiff again failed to comply. On February 25, 1987, a conference was held by Justice Lockman, attended by counsel for both parties. The plaintiff's attorney agreed to provide the previously demanded discovery material on or before March 6, 1987, and consented to March 20, 1987, as the rescheduled date for the taking of oral depositions. The plaintiff failed to meet the March 6, 1987, deadline. On March 13, 1987, the law secretary for Justice Lockman contacted the plaintiff's counsel at his office. Again counsel promised full compliance immediately. Thereafter, counsel failed to fulfill his promise and neither the plaintiff nor his attorney appeared on March 20, 1987, for the scheduled examinations before trial. By notice of motion dated March 23, 1987, the defendant moved to strike the plaintiff's

complaint. By order dated April 20, 1987, the court granted the defendant's motion without opposition. By notice of motion dated April 16, 1987, the defendant moved to amend the ad damnum clause of his counterclaim to increase the demand for damages from $22,000 to $77,000. Again, counsel did not oppose the motion, which was granted by order dated June 18, 1987. On or about July 29, 1987, the defendant moved for an "ex parte order" directing an inquest on his counterclaim and the entry of a default judgment predicated upon the plaintiff's failure to serve a reply. The proposed ex parte order was mailed to the plaintiff's attorney. Although it remained unopposed, the motion was denied. Thereafter, on September 23, 1987, the defendant moved on notice to renew and reargue his application for an inquest and for leave to enter a default judgment. Again, the plaintiff did not oppose the motion. By order dated October 29, 1987, the motion was granted, and an inquest was commenced on March 1, 1988, and concluded on March 22, 1988. Although the plaintiff was served with notice of the scheduled dates for the inquest, he never appeared. The plaintiff's attorney failed to oppose the defendant's application to vacate the lis pendens filed by the plaintiff on the subject property, which was granted by order of January 8, 1987. On May 3, 1988, a default judgment was entered against the plaintiff on the defendant's counterclaim to recover damages for fraud.

Over 20 months after the order dismissing the complaint was served upon the plaintiff and almost 8 months after the entry of the default judgment, the plaintiff made the instant motion by order to show cause issued January 10, 1989, to open his default and to vacate this order and judgment pursuant to CPLR 5015 (a) (1). Contrary to the plaintiff's contention, the denial of his motion was not an improvident exercise of discretion.

The proffered excuse for the plaintiff's default is the illness of his attorney. Although illness of an attorney may constitute a reasonable excuse for a default (*Berman v Brunswick Hosp. Center*, 94 AD2d 736; *Falso v Norton*, 89 AD2d 635; *Hargett v Health & Hosps. Corp.*, 88 AD2d 633), a careful review of the history of the "intermittent" recurrences of disabling pain associated with plaintiff's attorney's illness does not substantiate counsel's claim that the material defaults in the prosecution of the action and the defense of the counterclaim took place when he was incapacitated (*see, e.g., Pedone v Avco Fin. Servs.*, 102 AD2d 885; *Berman v Brunswick Hosp. Center*, *supra; Hargett v Health & Hosps. Corp.*, *supra; Valentin v Ina*

*Holding Corp.,* 20 AD2d 525). Furthermore, counsel's failure to seek assistance or substitution of other counsel during the period of an extended illness constitutes law office failure *(see, Gregory v Gibb,* 88 AD2d 988). It is also noteworthy that no explanation has been proffered for a delay of almost six months in bringing the instant application after counsel fully recovered from his illness. When a default results not from an isolated, inadvertent mistake, but from repeated neglect, as here, there is no requirement that the court grant the requested relief *(see, McCarthy v Chef Italia,* 105 AD2d 992). We also reject the plaintiff's contention that the repeated neglect of his attorney should not be imputed to him *(see, Greenwald v Zyvith,* 23 AD2d 201).

That the third mortgage was recorded does not suffice to establish a meritorious defense to the defendant's counterclaim. In an action between the vendor and the vendee, false statements and misrepresentations as to the existence of liens or encumbrances on realty constitute actionable fraud, even though the liens and encumbrances are matters of public record *(see generally,* 60 NY Jur 2d, Fraud and Deceit, §§ 69, 155; *Blumenfeld v Stine,* 42 Misc 411, *affd* 96 App Div 160; *Wright v Deniston,* 9 Misc 79). "It is no excuse for a culpable misrepresentation that means of probing it were at hand" *(Albert v Title Guar. & Trust Co.,* 277 NY 421, 423; *see also, Mead v Bunn,* 32 NY 275, 279). Although the plaintiff's complaint suffices as an affidavit of merit (CPLR 105 [t]; *A & J Concrete Corp. v Arker,* 54 NY2d 870), his claim has been forfeited by inexcusable neglect and inordinate delay. That branch of his motion which was to vacate the order appealed from is untimely under CPLR 5015 (a) (1). This is not an appropriate case for the exercise of the court's inherent power to entertain such an application *(cf., McMahon v City of New York,* 105 AD2d 101, 105-106; *Luna Baking Co. v Myerwold,* 69 AD2d 832). Mollen, P. J., Brown, Rubin and Sullivan, JJ., concur.