OPINION OF THE COURT
Peter Tom, J.
The parties in the submitted motions raise a sensitive issue as to whether an attorney should be permitted to sell his interest in an ongoing law practice.
Plaintiff Sheldon R. Raphael (Raphael) and Edward I. Friedman are the law partners and sole shareholders of the law firm Friedman & Raphael, P. C. (Law Firm). In or about *921 March 1990, Raphael decided to withdraw from the practice of law and the two lawyers entered into an agreement with defendant Phillip E. Shapiro (Shapiro), an attorney, to sell Raphael’s interest in the Law Firm to Shapiro for $39,500. The agreement further provides for the dissolution of the Law Firm and the formation of the new firm, Friedman & Shapiro, P. C. In connection with the agreement, Shapiro executed a series of promissory notes in the aggregate sum of the sales price and made payable to Raphael. The contract provides for 60 consecutive monthly payments commencing May 1, 1990 and an acceleration clause in the event of a default.
On or about April 1, 1991, Shapiro stopped payment on the notes and plaintiff Raphael commenced the instant action. Plaintiff is presently owed the principal sum of $30,283.38.
Plaintiff moves in this motion for summary judgment based upon the promissory notes. Defendant cross-moves (1) for an order dismissing the complaint on the ground that the contract is void under the law and (2) for summary judgment on the counterclaim return of moneys paid under the contract and for reformation of the contract.
The policy of this jurisdiction which is similar to the policy of many other States is that the sale by an attorney of an ongoing law practice is improper and prohibited by the Code of Professional Responsibility (Code of Professional Responsibility EC 4-6; Matter of Kaiser, 108 AD2d 510; see also, Litman v Litman, 93 AD2d 695).
There is a movement in the legal community of this and other jurisdictions to change this policy and to legalize the sale of law practices. The proponents for legalization argue that a law practice should be treated as a business asset and like other professions such asset should be saleable. They argue that such restriction creates a hardship for lawyers in the legal community especially the solo practitioner who may have devoted many years of dedicated service in building a successful and reputable practice, and are unable to sell the practice and good will when he or she leaves or retires from the practice.
In 1989, California amended its Rules of Professional Conduct to permit the sale of law practices but under specified conditions (Cal Rules of Professional Conduct rule 2-300). In February 1990, the American Bar Association adopted rule 1.17 of the Model Rules of Professional Conduct which permits the sale of law practices under certain prescribed terms and *922 conditions. Certain States have adopted the ABA model rule 1.17. In 1991, the Nassau County Bar Association officially advocated a change in the Code of Professional Responsibility to permit lawyers to sell their practices (NYU, Oct. 28, 1991, at 1, col 1).
While the issue is being debated, the present policy in this State is one of prohibition. Although there appears to be some equitable basis in the argument of proponents for legalization, without promulgation of specific terms and conditions to regulate the sale of law practices in the Code of Professional Responsibility there is a potential for abuse as envisioned by the legal community of this jurisdiction and as shown in the present case before the court.
The underlying reason for the policy of prohibition is based upon the unique and sensitive relationship between a lawyer and client. Such is a fiduciary relationship built on confidences and secrets (CPLR 4503; Code of Professional Responsibility Canon 4). The lawyer’s obligation to confidentiality and loyalty continues even after the termination of employment (Code of Professional Responsibility EC 4-1; Matter of Fleet v Pulsar Constr. Corp., 143 AD2d 187).
EC 4-6 provides in relevant part: "The obligation of a lawyer to preserve the confidences and secrets of his client continues after the termination of his employment. Thus a lawyer should not attempt to sell a law practice as a going business because, among other reasons, to do so would involve the disclosure of confidences and secrets. A lawyer should also provide for the protection of the confidences and secrets of his client following the termination of the practice of the lawyer, whether termination is due to death, disability, or retirement”.
The client’s trust and confidence in his attorney are at the very core of the fiduciary relationship. Client security in the soundness of the fiduciary relationship is vital to the smooth functioning of our adversarial system of jurisprudence (Emle Indus. v Patentex, Inc., 478 F2d 562 [2d Cir]).
The integrity of our legal system and the fair administration of justice mandate strict adherence to the Code of Professional Responsibility by all members of the Bar. Every attorney admitted to the Bar must strictly follow and subscribe to the provisions of the Code which was designed to protect the special relationship between attorneys and clients. (Matter of Peltz, 23 AD2d 173; Greenwald v Zyvith, 23 AD2d 201.)
*923 In the present case before the court, the parties to this agreement not only violated EC 4-6 prohibiting the sale of a law practice but by the contractual terms have blatantly violated other provisions of the Code of Professional Responsibility.
Plaintiff Raphael alleges that he is presently retired from the practice of law and is residing in Nevada. Under paragraph 12 of the contract, Raphael agrees not to notify clients of his retirement or of his new address and telephone number in the event he resumes his practice. Raphael further agrees that the name of the old law firm would remain in open display to the public. The telephone directory listings and window signs at the offices of the firm remain unchanged and are still in the name of Friedman & Raphael, P. C., after Raphael has departed from the Law Firm for over two years.
Raphael has violated his fiduciary duty to his clients by divulging without consent the confidences and secrets of his clients to a third party. (Code of Professional Responsibility Canon 4; DR 4-101 [22 NYCRR 1200.19].)
A lawyer withdrawing from employment has the obligation to avoid foreseeable prejudice to the rights of the client, including giving due notice to the client of his withdrawal or retirement. (See, Code of Professional Responsibility DR 2-110 [22 NYCRR 1200.15].)
The agreement further provides that in addition to the payment obligation by Shapiro, plaintiff Raphael shall also receive a percentage of fees and disbursements recovered on all matters handled by Friedman & Shapiro, P. C., on behalf of Friedman & Raphael, P. C. and on matters handled on behalf of Cohen, Friedman, Goldstein & Raphael, P. C.
This provision of the contract violated Code of Professional Responsibility DR 2-107 (22 NYCRR 1200.12) which provides:
"A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of the lawyer’s law firm or law office, unless:
"1. The client consents to employment of the other lawyer after a full disclosure that a division of fees shall be made.
"2. The division is in proportion to the services performed by each lawyer or, by writing given to the client, each lawyer assumes joint responsibility for the representation.
"3. The total fee of the lawyers does not exceed reasonable compensation for all legal services rendered the client.”
*924 Under the fee arrangement provided in the agreement, the parties also violated Code of Professional Responsibility DR 2-103 (B) and DR 2-103 (E) (22 NYCRR 1200.8 [b], [e]) which prohibit a lawyer from being compensated for merely recommending a client for employment.
Under paragraph 11 of the agreement, plaintiff further covenants and agrees that he will not reopen or reestablish a law office or engage in the practice of law in the Borough of Manhattan for a period of five years.
Code of Professional Responsibility DR 2-108 (A) (22 NYCRR 1200.13 [a]) provides: "A lawyer shall not be a party to or participate in partnership or employment agreement with another lawyer that restricts the right of a lawyer to practice law after the termination of a relationship created by the agreement, except as a condition to payment of retirement benefits.” (See also, Cohen v Lord, Day & Lord, 75 NY2d 95.)
The court finds plaintiff’s argument that the contract in issue is an agreement for the sale of plaintiff’s capital investment in the law office and for payment of retirement funds to be without merit.
While Code of Professional Responsibility DR 2-107 (B) and DR 2-108 (A) (22 NYCRR 1200.12 [a]; 1200.13 [a]) permit payment of retirement benefits to a retiring lawyer (Hendler & Murray v Lambert, 147 AD2d 444), the terms of the subject contract and the facts of this case do not support plaintiff’s contention.
The parties’ intention should be determined from the language employed within the four corners of the agreement, and where the language is clear and unambiguous, interpretation is a matter of law to be determined solely by the court. (Hartford Acc. & Indem. Co. v Wesolowski, 33 NY2d 169; Matter of Cale Dev. Co. v Conciliation & Appeals Bd., 94 AD2d 229.)
The agreement in issue is bare of any language pertaining to payment of retirement benefits. Raphael’s alleged retirement is not supported by the evidence in this case. The firm name of Friedman & Raphael, P. C., is shown in the directory listing and window signs of the law offices in full view of the general public. Plaintiff was never employed by the new firm of Friedman & Shapiro, P. C. and therefore, cannot be entitled to retirement benefits from this firm. There was never any working relationship between Raphael and Shapiro. The contract provides for payments to be made by Shapiro who was never a law partner of Raphael.
*925 Nor is there language in the contract providing for payment of Raphael’s capital investment in the law office.
Defendant contends that plaintiffs capital investment in the law office in 1990 was insignificant. Defendant asserts that the office furniture was between 20 and 25 years old. The office had two old typewriters and an old telephone system which often broke down. The library did not have the Official State Reports, New York Supplement, Session Laws, Shepard’s Citations, reference or other legal books, nor a law dictionary. Plaintiff does not deny these assertions.
The language employed in the subject contract is clear and unambiguous and constitutes purely an agreement for the sale of Raphael’s interest in the Law Firm and for his good will. The subject contract is void and unenforceable under Code of Professional Responsibility EC 4-6 and in violation of other provisions of the Code.
The court notes that plaintiff raised the issue of compensation for capital investment and retirement benefits only after defendant cross-moved to dismiss the complaint on the ground that the agreement between the parties is unenforceable. In plaintiff’s initial motion for summary judgment, Raphael asserts that the agreement provided for him to withdraw from the Law Firm and not to solicit clients of certain law firms and that he fully complied with the terms.
Defendant Shapiro who also knowingly violated the provisions of the Code of Professional Responsibility should not be permitted to reap the benefits of a void and unenforceable contract. The parties, in these circumstances, should be left as they are. (See, Segrete v Zimmerman, 67 AD2d 999.)
Based on the foregoing, plaintiff’s motion for summary judgment is denied. Defendant’s cross motion for various relief is granted only to the extent of dismissing plaintiff’s complaint, and is otherwise denied in its entirety. Defendant’s counterclaims are likewise dismissed.