**Mark PEROFF, Esq., Plaintiff,**

v.

**LIDDY, SULLIVAN, GALWAY, BEGLER & PEROFF, P.C. and Andrew V. Galway, Esq. and Jay H. Begler, Esq., Defendants.**

**No. 93 Civ. 6823 (PKL).**

United States District Court,
S.D. New York.

May 18, 1994.

Franzblau Dratch, P.C., New York City (Stephen N. Dratch, of counsel), for plaintiff.

Speno Goldman Goldberg Steingart & Penn, P.C., Mineola, NY (Richard F. Harrison, of counsel), for defendants.

*OPINION AND ORDER*

LEISURE, District Judge.

This is an action arising out of an attorney's withdrawal from a law firm. Plaintiff seeks partial summary judgment pursuant to Fed.R.Civ.P. 56 declaring a provision of a shareholders agreement concerning his right to compensation unenforceable as contrary to public policy.[1] Plaintiff also seeks certain injunctive relief concerning the forwarding of mail and transferring of client files.

## I. STANDARD FOR SUMMARY JUDGMENT

"Summary judgment may be granted if, upon reviewing the evidence in the light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Richardson v. Selsky,* 5 F.3d 616, 620 (2d Cir.1993). In deciding the motion, the Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Gladstone v. Fireman's Fund Ins. Co.,* 536 F.2d 1403, 1406 (2d Cir.1976) (quoting *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975)). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *Cruden v. Bank of New York,* 957 F.2d 961, 975 (2d Cir.1992); *Taggart v. Time, Inc.,* 924 F.2d 43, 46 (2d Cir.1991).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and identifying which materials "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once a motion for summary judgment is properly made, however, the burden then shifts to the nonmoving party, which " 'must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91

---

1. Plaintiff has not specified the nature of his motion but since both plaintiff and defendants have submitted affidavits to the Court in support of their positions, the Court construes plaintiff's motion as one for summary judgment.

L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)).

## II. FACTS OF THE CASE

Applying the above principles, the facts of this case are as follows. Liddy, Sullivan, Galway, Begler & Peroff, P.C. ("Liddy Sullivan") is a personal corporation, whose shareholders are defendants Andrew v. Galway, Esq., and Jay H. Begler, Esq., and, until his recent withdrawal, plaintiff Mark Peroff, Esq. Their rights are governed by a shareholders agreement (the "Shareholders Agreement"). Paragraph 7 of this agreement governs the withdrawal of partners from the firm and provides, *inter alia*, as follows:

> (C) The withdrawing Partner who elects to take clients with him shall be entitled only to one third of the difference between the accounts payable and accounts receivable, (including work in progress) determined on an accrual basis, as of the Effective Date of the withdrawal, excluding receivables previously designated as "uncollectible"....
>
> (D) in the event a Partner withdraws without his clients, the parties shall negotiate in good faith a buy-out of the withdrawing Partner's interest.
>
> (E) Solely at his cost and expense, the withdrawing Partner or his duly authorized representative, shall have the right to audit the books and records of the partnership to ensure the accuracy of the payments made pursuant to Paragraphs [7](a) through [7](e).[2]

Affidavit of Mark Peroff, sworn to on November 5, 1993, at Exhibit A.

Mr. Peroff has withdrawn from the firm and is continuing to provide legal services to clients that he served while he was with Liddy Sullivan.

## III. COMPENSATION TO A WITHDRAWING PARTNER UNDER THE SHAREHOLDERS AGREEMENT

The defendants contend that because Mr. Peroff has taken clients with him, his compensation is limited to the amount provided for under Paragraph 7(C) of the Shareholders Agreement. Mr. Peroff, however, contends that in providing that the amount of compensation to which a withdrawing partner is entitled depends upon whether he takes clients with him, the Shareholders Agreement violates DR 2–108(A) of the New York Code of Professional Responsibility. DR 2–108(A) provides that a lawyer shall not "participate in a partnership or employment agreement with another lawyer that restricts the right of a lawyer to practice law after the termination of a relationship created by the agreement, except as a condition to payment of retirement benefits." *See* New York Code of Professional Responsibility, DR 2–108(A), N.Y.Jud.Law App. (McKinney 1992).

In *Cohen v. Lord, Day & Lord*, 75 N.Y.2d 95, 551 N.Y.S.2d 157, 550 N.E.2d 410 (1989), the New York Court of Appeals invalidated a provision of a partnership agreement on the basis of DR 2–108(A). The provision provided that if a withdrawing lawyer " 'continue[d] to practice law in any state or other jurisdiction in which the Partnership maintains an office ... there shall be paid to him no proportion of the net profits of the Partnership collected thereafter, whether for services rendered before or after his withdrawal.' " *Id.*, 75 N.Y.2d at 97, 551 N.Y.S.2d at 158, 550 N.E.2d at 410. The Court of Appeals held that this provision was a penalty that impermissibly restricted the practice of law. The court noted that the provision would "discourage and foreclose a withdrawing partner from serving clients who might wish to continue to be represented by the withdrawing lawyer and would thus interfere with the client's choice of counsel." *Id.*, 75 N.Y.2d at 98, 551 N.Y.S.2d at 158, 550 N.E.2d at 411.

In *Denburg v. Parker Chapin Flattau & Klimpl*, 82 N.Y.2d 375, 604 N.Y.S.2d 900, 624 N.E.2d 995 (1993), the Court of Appeals again invalidated a provision of a partnership agreement on the basis of DR 2–108(A). The provision in dispute in that case provided that a withdrawing partner who continued to

---

**2.** The Shareholders Agreement refers to payments made pursuant to Paragraphs "8(a) through 8(e)" but no such paragraphs exist and it is plain that the reference was intended to be to Paragraphs "7(a) through 7(e)."

practice law in the private sector would have to pay the partnership the "greater of (i) 12.5% of the firm's profits allocated to the partner over the two previous years or (ii) 12.5% of billings to former Parker Chapin clients made by the partner's new firm over the ensuing two years." *Id.*, 82 N.Y.2d at 378, 604 N.Y.S.2d at 902, 624 N.E.2d at 997. The court found that the provision exacted a penalty "directly proportional to the success of a departing partner's competitive efforts" and that its effect was therefore to "improperly deter competition and thus impinge upon clients' choice of counsel." *Id.*, 82 N.Y.2d at 381, 604 N.Y.S.2d at 904, 624 N.E.2d at 999. Turning to the instant case, it is plain that the Paragraph 7(C) of the Shareholders Agreement violates DR 2–108(A) as interpreted by the Court of Appeals in *Cohen* and *Denburg*. The effect of Paragraph 7(C) is to exact a penalty upon a withdrawing partner who competes with Liddy Sullivan by servicing its former clients. Thus, Paragraph 7(C) is unenforceable as contrary to public policy.

It remains to be determined, however, what Mr. Peroff is entitled to under the Shareholders Agreement in light of this Court's conclusion that Paragraph 7(C) is unenforceable. This is a question that must be determined by considering the intentions of the parties. *See Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1098 (2d Cir. 1992) (" 'In determining whether contracts are separable or entire, the primary standard is the intent manifested, viewed in the surrounding circumstances.' ") (quoting *Rudman v. Cowles Communications, Inc.*, 30 N.Y.2d 1, 13, 330 N.Y.S.2d 33, 42, 280 N.E.2d 867, 873 (1972)). No party herein has suggested that when the Shareholders Agreement was drafted, the parties had any idea that Paragraph 7(C) might be invalid; such an awareness would have been unlikely since the Shareholders Agreement was drafted prior to the *Cohen* decision. Thus, the Court must turn to a general consideration of the aims of the parties as manifested in the language of the Shareholders Agreement.

Peroff contends that since Paragraph 7(C) is unenforceable as contrary to public policy, he is entitled to compensation under Paragraph 7(D). Paragraph 7(D) provides that "[i]n the event the partner withdraws without his clients, the parties shall negotiate a good faith buy-out of the withdrawing partner's interest." Peroff contends that this provision entitles him to a third of the value of Liddy Sullivan, that Liddy Sullivan's value is equal to its assets minus its liabilities, and that the firm's assets include its accounts receivable, work in progress, fixed assets, and goodwill. The Court finds this interpretation reasonable except with respect to the inclusion of goodwill.

Plainly, as a general matter, a business's value includes its goodwill since a business's liquidation value does not capture its full worth as a going concern. Accordingly, Liddy Sullivan's value includes the goodwill inherent in its practice, that is, Liddy Sullivan's existing client base and its ability to attract new clients based on its reputation. Thus, Mr. Peroff's position that he is entitled to compensation for a portion of the goodwill that he has labored to create is consistent with general principles of business valuation. However, the ethical principles governing lawyers plainly restrict practices that may be commonplace and entirely appropriate in other business contexts, and among these is dealing in goodwill.

EC 4–6 of the Code of Professional Responsibility provides that "a lawyer should not attempt to sell a law practice as a going business." This provision has been interpreted to prohibit the sale of a law practice. *See Raphael v. Shapiro*, 154 Misc.2d 920, 587 N.Y.S.2d 68, 69 (Sup.Ct.1992); *see also Corti v. Fleisher*, 93 Ill.App.3d 517, 523, 49 Ill.Dec. 74, 79, 417 N.E.2d 764, 769 (1st Dist.1981) (holding that a firm's clients are not "objects of commerce, to be bargained for and traded by merchant-attorneys like beans and potatoes.") In addition, the holdings of *Cohen* and *Denburg* plainly hamper the efforts of lawyers to deal in goodwill. Lawyers who agree to compensate withdrawing partners for their stake in the goodwill of a firm will naturally want to condition such compensation on the partner not taking the firm's goodwill—its clientele—with him. However, under *Cohen* and *Denburg*, such a condition

is plainly an impermissible restriction on competition.

■ Thus, Mr. Peroff's suggested interpretation of Paragraph 7(D) of the Shareholders Agreement runs contrary to the very ethical principles he has invoked to obtain invalidation of Paragraph 7(C) of this agreement. Were this Court to accept his interpretation, Mr. Peroff would be able to appropriate as much of the goodwill of Liddy Sullivan as he could in the form of existing clients, while being entitled to compensation for a third of whatever remained. This result would be neither equitable nor could it have been intended by the parties. Rather, it is plain that the parties would not have agreed to compensate a withdrawing partner for goodwill without an ability to ensure that the partner would not diminish that goodwill by taking existing clients. Thus, the Court finds that the compensation provided for goodwill is not severable from the duty to refrain from taking existing clients from the firm. The holding of this Court is therefore that where a partnership agreement provides that a withdrawing partner shall be entitled to a portion of the value of the firm conditioned upon not competing with the firm, a withdrawing partner shall be entitled to a portion of the value of the firm regardless of whether he competes with the firm or not, but the valuation of the firm shall not take account of the goodwill of the firm.

Accordingly, the Court finds that Mr. Peroff is entitled to be compensated for one third of the value of Liddy Sullivan, measured as the firm's assets minus its liabilities, with its assets to include its accounts receivable, work in progress and fixed assets.

## IV.  RIGHT TO AN ACCOUNTING

■ Mr. Peroff contends that he is entitled to an accounting. However, Paragraph 7(E) of the Shareholders Agreement provides that "[s]olely at his cost and expense, the withdrawing Partner or his duly authorized representative, shall have the right to audit the books and records of the partnership to ensure the accuracy of the payments made pursuant to Paragraphs [7](a) through [7](e)." The Court finds that this provision constitutes a waiver of a judicial accounting.

*See Raymond v. Brimberg*, 99 A.D.2d 988, 473 N.Y.S.2d 437, 439 (1st Dept., 1984). Accordingly, Mr. Peroff is not entitled to a court ordered accounting.

## V.  INJUNCTIVE RELIEF

Mr. Peroff also seeks an order from this Court directing that Liddy Sullivan forward his mail, provide appropriate information to parties making inquiry as to his whereabouts, and comply with the requests of clients to deliver their files to him. Liddy Sullivan contends that it is already in compliance with these requests and that Mr. Peroff's application for injunctive relief is consequently moot. Although it may therefore serve only to affirm a state of affairs that already exists, the Court will nonetheless direct such relief.

## CONCLUSION

For the reasons stated above, the Court declares that Mr. Peroff is entitled under the Shareholders Agreement to one third of the value of Liddy Sullivan, measured as the firm's assets minus its liabilities, with its assets to include its accounts receivable, work in progress and fixed assets.

The Court also directs Liddy Sullivan as follows: (1) That upon written request by any client of Liddy Sullivan to forward its files to Mr. Peroff, Liddy Sullivan shall identify all files pertaining to the client's affairs and deliver such files to Mr. Peroff and shall thereafter forward to Mr. Peroff all mail pertaining to the affairs of such clients; (2) That any party inquiring for Mr. Peroff shall be informed that he no longer practices with Liddy Sullivan and shall be given his current business telephone number and his current business address; (3) That Liddy Sullivan shall promptly forward to Mr. Peroff all mail addressed to him.

Finally, the Court denies Mr. Peroff's request for an accounting. The parties are hereby advised to appear for a pretrial status conference on June 24, 1994, at 2:00 p.m. in Courtroom 312.

**SO ORDERED.**