U.S. Equities Corp. v Songsanworn (2024 NY Slip Op 51319(U))

[*1]

U.S. Equities Corp. v Songsanworn

2024 NY Slip Op 51319(U)

Decided on September 25, 2024

City Court Of Buffalo, Erie County

Town, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 25, 2024
City Court of Buffalo, Erie County

U.S. Equities Corp., Plaintiff,

against
Jan Songsanworn, Defendant.

Index No. CV-004045-19/BU

Linda Strumpf, Esq.
69 Fox Run
South Salem, New York 10590
For the Plaintiff
Jan Songsangworn
Pro se

Rebecca L. Town, J.

BACKGROUND
In the instant application, the Plaintiff U.S. Equities Corp. moves pursuant to CPLR § 3215 (c) to vacate the dismissal in this action and secure entry of default judgment in its favor. This Court previously denied the Plaintiff's prior motion for vacatur and entry of default judgment, citing the Plaintiff's glaring oversight in failing to plead the elementary notice requirements mandated under CPLR § 2213 (a) in its notice of motion. Specifically in the aforementioned prior instance, the Plaintiff's notice of motion omitted a citation to the critical statute or section of law covering the relief it sought. To have entertained such a motion at that time would have constituted a denial of the Defendant's procedural due process rights which, historically, have always been understood as the right to be given notice and the right to be heard.
Astonishingly, the herein Plaintiff, with a display of either sheer indifference to this Court's directive or plain oversight, has repeated this same error. Paying no heed to the prior order of this Court, despite having been freely granted leave to correct its initial error, Plaintiff renewed its motion to vacate the dismissal in this action and seek entry of default judgment in its favor without citing the correct statutory provision in its notice of motion. As this Court is [*2]compelled to entertain the Plaintiff's arguments in favor of the underlying relief requested, however, we will momentarily set aside these concerns to examine the substance of the Plaintiff's instant motion.

DISCUSSION
It is the work of the New York State Courts to do substantial justice. Indeed, New York law implores trial courts to vacate its own judgments upon sufficient reason and in furtherance of substantial justice (Woodson v Mendon Leasing, 100 NY 62, 58 [2003]). Without question, justice is the most important principle under consideration for the administration of any legal system. Historically, the concept of justice has remained undefined throughout the relevant statutory texts. The principle of justice, then, is properly seen as an embedded principle in our jurisprudential syntax; an embedded principle being those factors assumed by the authoritative legal texts whose ontology and meaning must be determined by reference elsewhere. Hart and Sacks explained that the existence of embedded principles in law does not invite judges to simply materialize legal principles from their own imagination. Instead, these embedded principles permit jurists to engage in reasoned elaboration from these principles embedded into statutory texts in such a fashion as to provide a complete understanding of how the operative principles in a case are applied to produce a unique outcome for litigants. (Ernest Young, Institutional Settlement in a Globalizing Judicial System, 54 Duke L.J. 1143, 1150 [2005]).
Being that a motion to vacate a dismissal and grant relief from judgment is, by its categorical nature an equitable form of relief, it is necessary to apply a cognizable theory of justice to such a motion for any disposition that is fair to the respective litigants and meaningful in a legally truth-apt sense. Put differently, the Plaintiff's instant motion for vacatur of the dismissal and entry of a default judgment must be analyzed according to (i) established principles of justice and (ii) relevant statutory considerations. To prevent undue confusion resulting from this type of bivalent analysis, the herein opinion will first set forth an appropriate theory of justice applicable to this case, elucidate the governing legal principles, and synthesize the determinate outcome that results from a conjunction of the two separate analyses.
Motions to vacate a dismissal are equitable in nature, thus requiring courts to apply the principles of justice, as they intersect with the operative legal principles governing a case. This type of bivalent analysis, while necessary, can be confusing to parties as courts toggle between principles of equity and principles of law. To better explicate this analysis, the Court here will first analyze the view of justice that it adopts, elucidate the governing legal principle that uniquely determines this case, and then synthesize the two into a coherent whole.
a. The Court's Classical Conception of Justice
In the annals of philosophical thought, few concepts have elicited as profound a discourse of the notion of justice, as articulated by the Plato in his seminal work, The Republic. Justice, for Plato, is not merely a societal construct but a principle of harmony that permeates the very fabric of human existence, binding the individual soul and the polis in an intricate tapestry of virtue and order.
Plato conceives of justice as "the having and doing of one's own and what belongs to oneself (Plato, The Republic, 434 [a] [375 B.C.]). In The Republic, "Plato's conception of justice is informed by his conviction that everything in nature is part of a hierarchy, and that nature is ideally a vast harmony, a cosmic symphony, every species and every individual serving a purpose" Plato's (Chris Wright, Plato's Just State, Philosophy Now Vol. Vol 90 [2012]). This classical theory of justice can be discerned through the dialectical method, as employed by Socrates in The Republic. Justice, in this context, is explicated not through mere abstraction but [*3]through an examination of the ideal city, the Kallipolis. This polis is structured upon the cardinal virtues of wisdom, courage, moderation, and justice itself, each manifesting in the tripartite division of the city's classes: the rulers, the auxiliaries, and the producers (id).
To apprehend Plato's conception of justice, one must first understand the analogy between the city and the person. Just as the city is composed of three distinct classes, so too is the person divided into three parts: the rational, the spirited, and the appetitive. Justice, for Plato, is the state in which each part of the person performs its appropriate function without encroaching upon the others. The rational part, aligned with wisdom, ought to govern; the spirited part, aligned with courage, should support the rational; and the appetitive part, associated with desires, must be regulated by the other two. This harmonious arrangement engenders a just soul, wherein internal conflict is quelled, and virtue prevails (id).
Similarly, in the ideal city, justice is achieved when each class performs its designated role in accordance with its nature. The rulers, endowed with wisdom, make decisions for the common good; the auxiliaries, embodying courage, enforce these decisions; and the producers, governed by moderation, fulfill their economic functions. Justice, therefore, is the principle of specialization and non-interference, ensuring that each element of the city contributes to the harmonious functioning of the whole (id).
In the broader philosophical landscape, Plato's theory of justice stands as a repudiation of the Sophists' relativistic notions, which posited justice as a mere social construct, contingent upon power and mere convention. Plato, conversely, elevates justice to the realm of the Forms, an immutable and transcendent ideal that guides both the individual and the state toward the Good. Justice, in this Platonic view, is not an end but a means to achieving the highest form of existence, aligned with the Good, wherein the public official attains true knowledge and fulfillment.
Plato's elucidation of justice, though rooted in ancient thought, reverberates through the corridors of contemporary discourse, challenging us to contemplate the essence of our ethical and governmental structures. It implores us to consider whether our institutions reflect the harmonious order envisioned by Plato or whether they succumb to the discord of competing interests. In this contemplation, we find that Plato's vision of justice, while idealistic, offers a timeless blueprint for constructing a just and virtuous society.
Plato's conception of justice can be read vis-à-vis Aristotle's celebrated function argument, which Plato's student Aristotle developed in detail. In the Nichomachean Ethics Aristotle argues that everything in the world, including human beings, has a specific function, or purpose (Aristotle, Nichomachean Ethics § 1.7, [c. 350 B.C.]). This function is determined by an object or person's "characteristic activity" (id).
In Nichomachean Ethics § 1.7, Aristotle investigates what the characteristic function of a human being might be. He reasons that just as the function of a knife is to cut, and the function of an eye is to see, the function of a human must be something unique to all people. Aristotle defines this unique human function as rational activity — the ability to reason and act in accordance with reason. Thus, living a good life, or achieving eudaimonia, is about performing one's characteristic function well, which means living a life in accordance with virtue and reason (id). The nature of a person, object, or idea, therefore comes with its own built-in standard of evaluation; whatever falls short of its built in standard of evaluation results in a conceptual deficiency — to put a finer point on it, such failing results in a deficiency of goodness or injustice.
Plato's theory of justice, particularly as articulated in The Republic, can be illuminated by Aristotle's function argument. Plato argues that justice in the individual person is analogous to [*4]justice in the city: it is a harmonious order where each part performs its proper function. The just individual, like the just city, is one in which reason rules, the spirited part supports reason, and the appetitive part follows reason's guidance.
Aristotle's function argument helps to explain why this order is just: it aligns with the function of a human being. Since the human function is rational activity, a just soul, where reason governs, is fulfilling the human function and thus leading to a good life. This shows that Plato's concept of justice is not merely about social order but is deeply connected to human nature and the fulfillment of human potential. Adjointly, this concept of justice has an immediate impact on jurisprudence because it directly indicates that the Court would not act in furtherance of substantial justice where an argument for equitable relief rests upon conduct that knowingly falls short an appropriate standard of practice, as is in the instant case.
b. The Operative New York Legal Principles Viewed Through the Lens of the Balance of Equities Necessitate Dismissal of the Plaintiff's Motion
In the instant motion, Plaintiff makes an intellectual Faustian bargain of profound consequence: in pleading law office failure, the Plaintiff reveals a pattern of misjudgment — conceding to the existence of conditions that were not only foreseeable and preventable, but also perilously close to violating the New York Rules of Professional Conduct meant to safeguard the integrity of the legal profession and protect represented parties. In this admission, counsel wields the sword that will ultimately sever the rope holding up the Plaintiffs argument, leading the Plaintiff's motion to a demise of its attorney's own making.
It is solely within the discretion of the motion court to accept law office failure as a reasonable excuse (Roussodimou v Zafiriadis, 238 AD2d 568, 569 [2d Dept 1997], a pattern of neglect should not be excused (id. citing Gannon v Johnson Scale Col, 189 AD2d 1052; Chery v Anthony, 156 AD2d 414, 416 [2d Dept 1989]). New York courts do not allow law office failure to be plead as an accepted excuse to provide regular and routine relief from judgment or dismissal. The law office failure excuse is permitted only to provide a litigant relief from the single instance of an excusable mistake as opposed to repeated and persistent pattern of neglect, and only where a "detailed and credible explanation" is provided (see Ki Tae Kim v Bishop, 156 AD3d 776 [2d Dept 2017]).
In New York State, a motion for relief from judgment or dismissal predicated on law office failure will not prevail when the crux of the cited law office failure is based on the said law office being "understaffed" (Maldonado v Mosquera, 186 AD3d, 1352, 1353 [2d Dept 2020]). Whether the moving party in such a motion has a meritorious claim to relief from judgment or dismissal need not be considered when there is no reasonable excuse for the purported law office failure (id. at 1354).
Drawing upon both the relevant New York legal principles and the classical conception of justice outlined above, this Court denies the Plaintiff's instant motion. An attorney's characteristic function is to faithfully and competently advance the legal interests of their client(s) in the matter for which their representation has been secured. The New York Rules of Professional Conduct require counsel to execute their duty with competence. This encompasses a sphere of understanding when an attorney has taken on work that it is not properly equipped to handle, whether for staffing issues or other reasons.
The Plaintiff's counsel admits that it is pleading the defense of law office failure due to being understaffed (affirmation of plaintiff's counsel at 10 ["The reason that Plaintiff was late in filing its motion is that the undersigned was overwhelmed during this period of time and was extremely short-handed. I had approximately 8 clerical employees in January of 2020 and by [*5]August of 2022 I had two clerical employees, and only one was an experienced employee, although I made every possible effort to hire new employees). The Plaintiff's counsel further admits that she would not assume responsibility for representing her client, instead pawning off her own failure on the non-existence of staff she felt was necessary to carry out her abilities to represent her client in the herein action (affirmation of plaintiff's counsel at 11 ["Thus, there was basically no one in my office with any experience who had the time to do follow-ups where it was indicated that the judgment was submitted but not signed"]). Concerningly, Ms. Strumpf admits that she "could not keep up with" her work, and "That is the reason for the delay " Here, Plaintiff's counsel falls far below the standard required to execute her function as counsel for the Defendant. Under both equitable and legal analysis, the Plaintiff's reliance on the excuse of law office failure is unacceptable.
In light of this Court's conception of justice, articulated above, and its application in determining the equities at stake in the instant motion, the Plaintiff's motion must be dismissed. Not only do the admissions of Plaintiff's counsel exemplify a failure to uphold the basic responsibilities of practice and duties owed to the Plaintiff as a client, Plaintiff's counsel openly acknowledges a pattern of neglect; attributing counsel's shortcomings to being understaffed and overwhelmed. This admission not only reveals a lack of foresight and preparation but also contradicts the fundamental tenets of justice, which demand accountability and diligence from legal representatives. Justice, in its classical sense, requires that attorneys advocate effectively and competently for their clients, adhering to the standards set forth by the New York Rules of Professional Conduct. The Plaintiff's reliance on law office failure as a justification for their inaction fails to satisfy the requisite threshold for relief, as it reflects an abdication of responsibility rather than an acceptable explanation for their conduct. As such, the Court must uphold the integrity of the legal system by denying the motion, ensuring that the principles of justice are maintained in the pursuit of fairness and accountability within the profession. Moreover, the acceptance of Plaintiff's excuse of law office failure in this case would constitute an injustice against the herein Defendant.

CONCLUSION
Accordingly, it is hereby ORDERED that Plaintiff's motion to vacate the dismissal in this action and grant default judgment in favor of the Plaintiff is DENIED with prejudice.
E N T E R
Dated: September 25, 2024
Buffalo, New York
Hon. Rebecca L. Town
Buffalo City Court Judge