OPINION OF THE COURT
Bellacosa, J.
A law firm partnership agreement which conditions payment of earned but uncollected partnership revenues upon a withdrawing partner’s obligation to refrain from the practice of law in competition with the former law firm restricts the practice of law in violation of Disciplinary Rule 2-108 (A) of the New York Code of Professional Responsibility and is unenforceable in these circumstances as against public policy.
For almost 20 years plaintiff Cohen was a partner in the defendant law firm, Lord, Day & Lord (LD&L) where, prior to his departure, he served as head of the firm’s tax department. *97 In 1985, Cohen withdrew from the defendant firm to become a partner in another New York City law firm.
The LD&L partnership agreement included a provision protecting against automatic dissolution and recognized that withdrawing partners were entitled to a share of the firm profits representing unpaid fees, and fees for services performed but not yet billed, at the time of departure. In order to avoid the expense and bookkeeping complication of a detailed accounting, the agreement provided for departure payment, based on a formula, to be paid over a three-year period.
When Cohen requested his departure compensation, LD&L refused to pay, stating that Cohen had forfeited the money by electing to continue to practice law in competition with the firm. In support of its position, the defendant firm relied on the forfeiture-for-competition clause of the partnership agreement: "Notwithstanding anything in this Article * * * to the contrary, if a Partner withdraws from the Partnership and without the prior written consent of the Executive Committee continues to practice law in any state or other jurisdiction in which the Partnership maintains an office or any contiguous jurisdiction, either as a lawyer in private practice or as a counsel employed by a business firm, he shall have no further interest in and there shall be paid to him no proportion of the net profits of the Partnership collected thereafter, whether for services rendered before or after his withdrawal. There shall be paid to him only his withdrawable credit balance on the books of the Partnership at the date of his withdrawal, together with the amount of his capital account, and the Partnership shall have no further obligation to him.” (Emphasis added.)
Cohen sued and his former firm interposed the forfeiture-for-competition clause as a defense, noting that upon his departure he continued to practice law with a New York City law firm in direct competition with his former partners. The firm also complained that plaintiff took several LD&L clients and an associate attorney with him to his new firm. On LD&L’s motion to dismiss and on Cohen’s cross motion for summary judgment, the trial court ruled for Cohen that the clause was unenforceable as violative of Disciplinary Rule 2-108 (A). The Appellate Division reversed and dismissed, stating that the clause was valid as an "financial disincentive” to competition and did not "prevent plaintiff from practicing law in New York or in any other jurisdiction” (144 AD2d 277, 279). We granted leave to appeal to plaintiff and now reverse.
*98 We hold that while the provision in question does not expressly or completely prohibit a withdrawing partner from engaging in the practice of law, the significant monetary penalty it exacts, if the withdrawing partner practices competitively with the former firm, constitutes an impermissible restriction on the practice of law. The forfeiture-for-competition provision would functionally and realistically discourage and foreclose a withdrawing partner from serving clients who might wish to continue to be represented by the withdrawing lawyer and would thus interfere with the client’s choice of counsel.
DR 2-108 (A) of the New York Code of Professional Responsibility, entitled "Agreements Restricting the Practice of a Lawyer”, provides: A lawyer shall not be a party to or "participate in a partnership or employment agreement with another lawyer that restricts the right of a lawyer to practice law after the termination of a relationship created by the agreement, except as a condition to payment of retirement benefits.” The purpose of the rule is to ensure that the public has the choice of counsel. In ABA Formal Opinions on Professional Ethics, No. 300 (1961), the Ethics Committee concluded it was unethical for an attorney to insert a restrictive covenant in a contract of employment with another attorney despite the absence of an express prohibition in the Canons of Ethics. The Committee began its analysis by citing Opinion 109 of the New York County Lawyers’ Association issued in 1943, which stated: "Clients are not merchandise. Lawyers are not tradesmen. They have nothing to sell but personal service. An attempt, therefore, to barter in clients, would appear to be inconsistent with the best concepts of our professional status”. The Committee then added that: "It appears to this Committee that a restrictive covenant * * * would be an attempt to 'barter in clients’. In this connection, we call attention to that part of Canon 7, reading as follows: 'Efforts, direct or indirect, in any way to encroach upon the business of another lawyer, are unworthy of those who should be brethren at the Bar’. * * * Canon 27 prohibits every form of solicitation of employment. A former employee of a lawyer or a law firm would be bound by these canons to refrain from any effort to secure the work of clients of his former employer. Furthermore, he would be bound, under Canons 6 and 37 to preserve the confidences and not divulge the secrets, of any clients of his former employer * * * Obviously, no restrictive covenant in an em *99 ployment contract is needed to enforce these provisions of the Canons of Professional Ethics”.
When the Code of Professional Responsibility was adopted, DR 2-108 (A) codified the ruling, and the rationale of Opinion No. 300 has been applied to bar restrictive covenants among law firm partners (ABA Inf Opn No. 1072 [1968]) and to prohibit agreements forbidding arrangements for lawyer associates to accompany a withdrawing partner (ABA Inf Opn No. 1417 [1978]).
LD&L argues that DR 2-108 (A) and the ABA opinions construing it condemn only blanket prohibitions on a lawyer’s practice of law in a community, and that something denominated an economic disincentive, like its forfeiture-for-competition clause, does not prevent Cohen from practicing law. The argument does not withstand scrutiny in these circumstances.
In Gray v Martin (63 Ore App 173, 663 P2d 1285), the Oregon Court of Appeals invalidated a partnership agreement which required a forfeiture of financial benefits if the withdrawing attorney practiced in a designated three-county area. The law firm argued, as defendant argues here, that the covenant did not "restrict” the withdrawing lawyer’s right to practice because that lawyer could still practice somewhere else or practice locally by accepting the consequences of the forfeiture penalty. The court rejected this argument and held that the clause violated DR 2-108 (A): "Paragraph 25 fits squarely within the prohibition contained in DR2-108(A). It affects defendant’s right to practice law * * * by requiring that if he does so he loses the benefits that would otherwise be his. This is certainly a restriction on his right to practice” (63 Ore App, at 182, 663 P2d, at 1290; see also, Hagen v O’Connell, Goyak & Ball, 68 Ore App 700, 683 P2d 563 [invalidating a provision of a shareholder agreement of a legal professional corporation which provided that the corporation would buy back a withdrawing attorney’s stock for full value if the attorney agreed not to practice law in competition with firm; if the attorney did not agree, the buy-back price was reduced 40%]).
In the only New York case on the subject, Matter of Silver-berg (Schwartz) (75 AD2d 817 [Hopkins, J.], appeal dismissed 53 NY2d 704), the Appellate Division held unenforceable an agreement which provided that upon termination of the partnership, neither partner was to represent clients of the other for an 18-month period unless the client directed otherwise in *100 writing. If a partner were to represent a client of the other, 80% of the gross fees recovered were to be turned over to the client’s original attorney. The court, stating that "[l]awyers should not traffic in clients”, concluded that the agreement "amounts to a covenant restricting the practice of a lawyer” in violation of DR 2-108 (A) (75 AD2d, at 819).
Defendant’s argument that the disciplinary rule does not prohibit financial disincentives is also refuted by the plain portion of the rule exempting agreements among partners dealing with retirement benefits. The general principle of statutory construction that meaning and effect should be given to all language of a statute or rule is apt here. Words are not to be rejected as superfluous where it is practicable to give each a distinct and separate meaning (Matter of Bliss v Bliss, 66 NY2d 382; McKinney’s Cons Laws of NY, Book 1, Statutes § 231). Presumably, if financial penalties were not "restraints” within the meaning of the rule, there would be no need to exempt the specific category of financial arrangements dealing with retirement.
Equally unpersuasive in this respect is defendant’s argument that the "retirement exception” actually authorizes the forfeiture of previously earned but uncollected departure compensation. Retirement benefits are set forth in a mutually exclusive section of the LD&L agreement itself (see, art 9) — it expressly excludes withdrawing partners and refers them back to the forfeiture-for-competition provision. Moreover, unlike retirement benefits, which extend to the death of the retiring partner and then may even continue to the partner’s surviving spouse, departure compensation is temporally limited — all payments are to be made and conclude three years following withdrawal. Finally, to treat depárture compensation as a retirement benefit would invert the exception into the general rule, thus significantly undermining the prohibition against restraints on lawyers practicing law.
For all these reasons, we disagree with the independent grounds advanced by Chief Judge Wachtler’s dissent urging enforcement of the forfeiture facet of the contested clause based on the retirement exception of DR 2-108 (A).
Defendant also urges in a policy argument that forfeiture of departure compensation is justified because of the economic hardship suffered by a firm when a partner leaves to join a competitor firm. Defendant cites the risk that withdrawing partners are likely to hurt the firm’s future profits by taking *101 with them clients previously tied to the firm. While a law firm has a legitimate interest in its own survival and economic well-being and in maintaining its clients, it cannot protect those interests by contracting for the forfeiture of earned revenues during the withdrawing partner’s active tenure and participation and by, in effect, restricting the choices of the clients to retain and continue the withdrawing member as counsel (see, Post v Merrill Lynch, Pierce, Fenner & Smith, 48 NY2d 84, 89).
We are taught somewhat elementally that, unless there is an agreement to the contrary, withdrawal of a partner constitutes dissolution of the law partnership (Partnership Law § 60; Matter of Vann v Kreindler, Relkin & Goldberg, 54 NY2d 936). When there is an agreement to avoid automatic dissolution of the firm, however, the withdrawing partner may forego the ordinary and full accounting for the amount owed had there been a formal dissolution and liquidation (Partnership Law § 69). Each party benefits and takes on obligations from this arrangement. Thus, while it is generally true that parties to a partnership agreement can include " 'any agreement they wish’ ” (dissenting opn of Hancock, Jr., J., at 103), the terms of the agreement, including arrangements by which the mutual and important interests of a continuing law firm and a withdrawing partner can be protected, must not conflict with public policy as reflected in DR 2-108 (A) (see, Gelder Med. Group v Webber, 41 NY2d 680, 684). As to such arrangements and agreements, we imply no prejudgment or disapproval. But the one at issue here does clash with the rule and thus cannot’ be enforced.
The assertion in Judge Hancock’s dissent that the LD&L clause need not be rendered unenforceable "[e]ven assuming” it violates DR 2-108 (A) (see, dissenting opn of Hancock, Jr., J., at 108) sidesteps the resolution of this contract dispute between these parties based on a policy which is and should be dispositive. One searches in vain to find any suggestion as to what civil remedy might exist between contracting lawyer parties with respect to a determined violation of a disciplinary rule. Apparently, that dissent would recognize none.
Our holding, it must be appreciated, is premised on a careful assessment of the true issue and effect of the contested clause — entitlement to earned uncollected fees during the tenure of the partner as a working member of the firm, not to "future distributions”, a characterization advanced by Judge *102 Hancock’s dissent apparently designed to attribute some windfall effect to our decision. There is none of that either. What would occur, were we to hold as the dissents would, is a forfeiture of earned income.
Finally, Judge Hancock’s dissent should not want to transform our narrow holding into something broader than it is. We address only the contested clause in the context of this litigation and this professional relationship, and we expressly caution against a categorical interpretation or application.
Accordingly, the order of the Appellate Division should be reversed, with costs, and defendant’s motion for summary judgment dismissing the first cause of action should be denied, plaintiff’s cross motion for summary judgment on the first cause of action should be granted, and the case should be remitted to Supreme Court for determination of the amount due plaintiff.