Bellacosa, J.
(dissenting). I respectfully dissent, concluding that the withdrawn partner’s case is meritless. The law firm *386 partnership provision at issue should not be declared void as against public policy for it is not within the intendment or language of Cohen v Lord, Day & Lord (75 NY2d 95). The Court there expressly warned against "categorical interpretation or application” of such provisions, envisioned a flexible, practical analysis, and pinpointed the narrow effect of the adjudicated principle to the "contested clause” in the "context” of that "litigation” and "professional relationship” (id., at 102).
In this case, the Court turns away from those crucial qualifications and that admonition. The consequence of squeezing this capital account partnership provision — insofar as it affects partners who defect from the partnership and its capital obligations — into the narrow Cohen prohibition inevitably creates the eschewed absolutist universe. Ignored or bypassed are the individualized economic and professional factors, seasoned with the hoped-for but unrealized realism and practicality, that are the hallmarks of this provision, contrasted to that in Cohen. The fact that the provision here, understood and explained through appropriate extrinsic evidence, is keyed to a special, temporally limited proportionate capital leasehold risk affecting all then-liable partners, is ignored and given no weight or consideration. Those are the kind of features that the Court was concerned about when it asserted a flexible formula in Cohen to govern and guide future disputes relating to the wide variety of these extant and still adjusting and evolving provisions.
The partners here were bound by a fiduciary, contractual, long-term fiscal and professional relationship inter sese, as law partners. However, the provision that bound them together and defined the consequences when any one of them should leave the firm is sufficiently different in degree, in kind, and in litigation context and professional relationship to distinguish it from the one in Cohen v Lord, Day & Lord (75 NY2d 95, 102, supra). Here, it was formulated in 1983 to deal with a specific capital risk undertaken by all partners together and was designed to "insure that either the partners stayed together for five years to share the burden of these increased costs and expenses, or that those who chose not to do so would compensate the Firm appropriately” (affidavit of Rosenzweig; compare, Gillers, A Rule Without A Reason: [Let the market, not the bar, regulate settlements that restrict practice], 79 ABA J 118 [Oct. 1993]). Therefore, the provision at issue here *387 should not be viewed in a vacuum, and the extrinsic evidence that legitimately explains its functional purpose cogently serves to take this provision out of the narrow, prohibited Cohen public policy blunderbuss. This one is not directed essentially at the concerns exalted in the Code of Professional Responsibility and only incidentally affects the lawyers’ relationships to clients.
Moreover, to allow lawyers, like plaintiff, to use the ennobling professional objectives that underlie Cohen v Lord, Day & Lord (75 NY2d 95, supra) to unearth settled matters, and to leverage dollar differences in this fashion, is an expressly contraindicated, puristic application of the Cohen rationale and objective, that gives plaintiff an unmerited, delayed-action windfall. Here, plaintiff entered the partnership agreement in 1983, negotiated with his firm, defendant Parker Chapin, about settling the capital account in 1986, and conspicuously abandoned this apparently amicably resolved dollar battle. Then, two months after this Court’s sharply divided decision in Cohen in 1990, the long gone partner resuscitated the dead-to-dormant dispute. These machinations do not foster the professionalism and the goals of the Code of Professional Responsibility that are the sole root of this Court’s narrowly fashioned remedy in Cohen. Rather, they further undermine those high concerns by emphasizing and rewarding dollars over service under the aegis of public policy that is broadly superimposed over contractual arrangements between reasonable lawyers, who are part of a public profession and are or were part also of a joint economic enterprise.
I could join in the Court’s remittal were I not convinced that the right result is to go the whole distance and reject plaintiff’s theory outright on the ground that the contested provision of this partnership agreement is not void as violative of the kind of professionalism that the Court had in mind when it declared its public policy view in such cautious fashion in Cohen (compare, Hackett v Milbank, Tweed, Hadley & McCloy, 181 AD2d 519, revd on other grounds 80 NY2d 870).
Judges Simons, Titone, Hancock, Jr., Smith and Levine concur with Chief Judge Kaye; Judge Bellacosa dissents in a separate opinion.
Judgment of Supreme Court appealed from and order of the Appellate Division brought up for review modified, etc.