OPINION OF THE COURT
Herman Cahn, J.
Defendants James Haber, U.S. Realty Associates and U.S. Realty Corp. move to disqualify the law firm of Beigel, Schy, Lasky, Rifkind, Goldberg, Fertik & Gelber from serving as plaintiffs’ counsel herein.
Plaintiffs’ attorney formerly represented other plaintiffs in an action brought against various defendants, including at least two of the defendants herein. In settling that other action, counsel agreed, as part of the settlement agreement, not to "assist or cooperate with any other parties * * * in any action against the * * * defendants” as to the matters involved in this action, among others. Defendant-movant seeks to enforce the agreement by disqualifying plaintiffs’ attorneys.
Plaintiffs, limited partners in defendant Madeira Plaza Associates, allege that defendants engaged in self-dealing by, inter alia, misleading plaintiffs into selling their limited partnership interests at a discounted price, and converting partnership opportunities for their own personal gain. Plaintiffs assert claims of breach of fiduciary duty and unjust enrichment and seek an accounting and dissolution of the limited partnership, among other relief.
Movants in their counterclaim allege plaintiffs intentionally and tortiously induced the breach of a settlement agreement entered into on July 12, 1990, of an action then pending in Illinois. Beigel & Sandler, Ltd., the predecessor firm of plaintiffs’ counsel herein, specifically entered into that agreement on its *31 clients’ and on its own behalf. The defendants James Haber and Harvey Minors were also defendants in the Illinois action; and the settlement agreement was entered into on their behalf. The claims in the Illinois action which were resolved included claims of securities fraud and Racketeer Influenced Corrupt Organizations violations unrelated to this action. Movants allege that plaintiffs, by retaining the Beigel firm to represent them in the instant action, caused the Beigel firm to breach paragraph 10 of the settlement agreement which prohibits the Beigel firm from representing or assisting claimants asserting certain claims against Haber, such as the claims asserted herein.
Movants seek to disqualify the Beigel firm from serving as plaintiffs’ counsel herein on grounds that the agreement not to represent or assist claimants against defendant Haber, among others, is enforceable.
Plaintiffs, in opposition, contend that the prohibition does not encompass representation and, therefore, does not provide a basis for disqualification. If, however, it is found to include a ban of representing claimants against Haber, it would be unenforceable as a matter of law.
The subject clause provides in relevant part: "As an inducement to the settling defendants to enter into this Settlement Agreement, and as a material condition thereof, Beigel & Sandler, Ltd. warrants and represents to the settling defendants that neither such firm nor any of its employees, agents, or representatives will assist or cooperate with any other parties or attorneys in any action against the settling defendants arising out of, or related in any way to the investments at issue in the actions or any other offerings heretofore or hereafter made by the settling defendants * * * unless such action is instituted by a governmental agency and such assistance or cooperation is mandated by legal process, nor shall they encourage any other parties or attorneys to commence such action or proceeding.” (Illinois action settlement agreement 10.)
The provision employs clear and unambiguous terms, rendering resort to extrinsic facts to determine the parties’ intent unnecessary (see, American Express Bank v Uniroyal, Inc., 164 AD2d 275). The terms, when accorded their plain meaning and full effect, prohibit the Beigel firm from representing third parties in future actions against the Illinois action defendants, including Haber, relating to certain investments or offerings.
Contrary to the plaintiffs’ contentions, the words, "assisting” and "cooperating,” have very broad meanings which most *32 certainly encompass representation. Similarly, "other parties” necessarily includes future clients. If the true intent and purpose of the parties are reasonably within the scope of the language used, they must be taken to be as much a part of the agreement as if plainly expressed (Manson v Curtis, 223 NY 313). To interpret the provision as prohibiting the Beigel firm from assisting plaintiffs while permitting it to actually represent plaintiffs would be to produce an absurd result. The "parties to an agreement are presumed to act sensibly in regard to it” (River View Assocs. v Sheraton Corp., 33 AD2d 187, 190, affd 27 NY2d 718).
The issue of the validity of such a provision has not been squarely faced until now by the New York courts, although it has been considered by other jurisdictions. The court finds that the subject provision is an improper restriction on the Beigel firm’s ability to practice law in violation of Code of Professional Responsibility DR 2-108 (B) (22 NYCRR 1200.13 [b]) and is, therefore, unenforceable.
DR 2-108 (B) prohibits lawyers from entering into an agreement in connection with the settlement of a controversy or suit which restricts their right to practice law. The rule was adopted from, and is substantively the same as, rule 5.6 (b) of the ABA Model Rules of Professional Conduct (Cohen v Lord, Day & Lord, 75 NY2d 95, 107, n 3, 108, n 4 [Hancock, Jr., J., dissenting]), as was rule 5.6 (b) of the Illinois Rules of Professional Conduct (111 St Bar Assn Advisory Opn No. 92-14).
The ABA Ethics Committee has interpreted the rule as prohibiting a lawyer from entering into a settlement agreement on behalf of present clients which would require the lawyer to decline to represent future clients against a particular defendant (ABA Standing Comm on Ethics and Professional Responsibility Opn No. 93-371). The rule reflects the strong public policy of protecting an individual’s right to unfettered choice of counsel by prohibiting agreements limiting "the access of the public to lawyers who, by virtue of their background experience, might be the very best available talent to represent these individuals.” (Ibid.) Moreover, such a restriction creates an improper conflict of interest between the attorney and future clients. (Ibid.)
Similarly, the ABA Ethics Committee in an earlier opinion focusing on what would become subdivision (a) of the rule concluded restrictive covenants between attorneys were unethical (Cohen v Lord, Day & Lord, supra, at 107, citing ABA Formal Ethics Opn No. 300). The Ethics Committee explained *33 its position by citing an opinion issued by the New York County Lawyers’ Association, in which the Association stated: " 'Clients are not merchandise. Lawyers are not tradesmen. They have nothing to sell but personal service. An attempt, therefore, to barter in clients, would appear to be inconsistent with the best concepts of our professional status.’ ” (Cohen v Lord, Day & Lord, 75 NY2d, at 98, quoting New York County Lawyers’ Assn Opn No. 109.)
This rationale clearly underlies subdivision (b) of the rule as well (see, Colo Bar Assn Ethics Comm Formal Opn No. 92).
Moreover, the State bar associations which have considered restrictive covenants in settlement agreements support the ABA interpretation and application of the rule prohibiting such restrictions (see, e.g., Ala St Bar Disciplinary Comm Opn No. 92-01; Colo Bar Assn Ethics Comm Formal Opn No. 92; DC Bar Assn Opn Nos. 35, 147; Mich St Bar Assn Ethics Opn No. CI-1165; NC St Bar Assn Opn No. 179; NM St Bar Advisory Opns Comm Opn No. 1985-5; Ore St Bar Assn Comm on Professional & Judicial Ethics Opn No. RI-132; Tex St Bar Assn Professional Ethics Comm Opn No. 505).
Courts have also considered such restrictive covenants when they appear in settlement agreements, and have found them to be unethical and against public policy, and, therefore, to be void and unenforceable (see, e.g., Jarvis v Jarvis, 12 Kan App 2d 799, 758 P2d 244; Cohen v Graham, 722 P2d 1388 [Wash]). Similarly, most courts which have considered the issue have uniformly struck down as unethical, anticompetition restrictions in partnership or employment agreements between attorneys (Whiteside v Griffis & Griffis, 902 SW2d 739 [Tex]; 10 ABA/BNA Lawyers’ Manual on Professional Conduct, Analysis, No. 24 [Dec. 28, 1994], and cases cited therein considering ABA Model rule 5.6 [a] and ABA Model Code DR 2-108 [a]; see, e.g., Cohen v Lord, Day & Lord, supra; compare, Hackett v Milbank, Tweed, Hadley & McCloy, 86 NY2d 146 [holding the arbitrator’s finding that a particular restrictive covenant was "competition netural” and, therefore, enforceable did not contravene the anticompetition public policy]). This view is not however unanimously held (see, Howard v Babcock, 6 Cal 4th 409, 25 Cal Rptr 2d 80, 863 P2d 150). The view has been criticized by some commentators (see, Gillers, A Rule Without a Reason: Let the Market, not the Bar, Regulate Settlements that Restrict Practice, 79 ABA J 118 [1993]).
The representation restriction upon which movants rely is unenforceable as an unethical restriction on the Beigel firm’s *34 practice of law and, therefore, cannot serve as a basis to disqualify.
In so holding, the court notes that nothing in this decision should be construed as affecting the enforceability of the balance of the Illinois action settlement agreement. That issue is not before the court, although the court notes in passing it would appear the restrictive covenant is severable, permitting the balance of the settlement agreement to remain in force (see, e.g., Jacob v Norris, McLaughlin & Marcus, 128 NJ 10, 607 A2d 142; Shebay v Davis, 717 SW2d 678, 682 [Tex]; Cohen v Graham, supra).
Movants next argue that Beigel firm attorneys may be called by either side as material witnesses regarding movants’ tortious interference counterclaim.
Plaintiffs contend that testimony by Beigel firm attorneys is unnecessary, cumulative and will not be prejudicial to plaintiffs.
A civil litigant has the fundamental right to choose its legal counsel (Lightning Park v Wise Lerman & Katz, 197 AD2d 52). Any restriction on this right must be carefully scrutinized (Matter of Abrams, 62 NY2d 183). The right is not without limit, however, and an attorney may not accept employment which violates the duty of loyalty owed by the attorney to the client (Greene v Greene, 47 NY2d 447; Code of Professional Responsibility DR 5-101 [22 NYCRR 1200.20], 5-102 [22 NYCRR 1200.21]). Similarly, while there is no absolute bar to serving as both counsel and witness, an attorney may not act as advocate where the attorney should testify at trial and that testimony is material and necessary or prejudicial to the client’s case (S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp., 69 NY2d 437; Ocean-Clear, Inc. v Continental Cas. Co., 94 AD2d 717). A determination of "necessary” takes into account such factors as the significance of the matters, weight of the testimony, and availability of other evidence (S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp., supra). Testimony which is probative, relevant or useful is not always necessary testimony (Luk Lamellen u. Kupplungsbau GmbH v Lerner, 167 AD2d 451).
Movants have failed to demonstrate that testimony by Beigel firm attorneys is necessary or prejudicial. To succeed on the tortious interference counterclaim, movants must prove that, inter alia, the restrictive covenant is valid and enforceable and that plaintiffs had knowledge of the settlement agreement terms and intentionally procured a breach thereof by the *35 Beigel firm (see generally, Israel v Wood Dolson Co., 1 NY2d 116 [the elements of a claim for tortious interference with contractual relations are: a valid contract between the plaintiff and another, defendant’s knowledge of such contract, defendant’s wrongful, intentional procurement of the breach without legal justification or excuse and damages]). As held above, the restrictive covenant is unenforceable.
Accordingly, the motion is denied.