OPINION OF THE COURT
Kenneth R. Fisher, J.
Plaintiff, Oak Orchard Community Health Center, Inc., has moved by order to show cause for a preliminary injunction enjoining defendant from establishing a pediatric medical practice at 21 Union Hill Drive, Spencerport, New York, or anywhere within a 10-mile radius of plaintiffs health centers in Brockport, New York, and Albion, New York, and from advertising any such practice in said locations. A temporary restraining order (TRO) was issued by the court on April 26, 2005, granting that same relief pending the hearing of this motion. Defendant, Elizabeth Blasco, M.D., has cross-moved to vacate the TRO.
Plaintiff is a community health center created in the mid-1970s to serve the migrant population in Western Monroe and Orleans counties. Plaintiff’s principal office is in Brockport, New York, but it also maintains an additional center in Albion, New York. In May 2000, defendant, fresh off her residency at Strong Memorial Hospital, sought employment with plaintiff. She sought a short-term contract; plaintiff wanted a long-term contract. They settled on a one-year contract. Plaintiff offered defendant employment at the Brockport office as a pediatrician via an offer letter, which, when signed and accepted by defendant, became defendant’s employment agreement. The agreement contains a restrictive covenant which reads as follows (1Í17):
“If, for any reason, the relationship between you and Oak Orchard Community Health Center, Inc. is terminated, you will not establish a practice for a radius of ten miles from either site for a period of two years from the last day of employment with Oak Orchard Community Health Center, Inc. This clause is necessary to protect the investment . . . Oak Orchard Community Health Center will make in establishing and developing the practice. This clause as written, is intended to protect the interests of Oak Orchard Community Health Center. This clause may be waived at the sole discretion of Oak Orchard Community Health Center. For example, if Oak Orchard were unable to continue the operation of the practice, the Board of Directors could consider waiving this provision.”
*929 Defendant commenced employment with plaintiff on September 5, 2000, and continued full-time employment until the fall of 2003, when she requested and received a reduced work schedule. After what she claims were some substantial disagreements with plaintiff’s chief pediatrician, defendant gave notice, in October 2003, of her intent to resign. Defendant’s last day of employment with plaintiff was in January 2004. She became employed by Strong Memorial Hospital.
Over a year later, in March 2005, defendant met with David Fisher, president of plaintiff, and James Goetz, M.D., plaintiffs medical director, in an effort to obtain some forbearance of her noncompete agreement. During the course of that meeting, defendant informed Fisher and Goetz that she planned to open a primary care pediatric practice in Spencerport, New York, in an office that plaintiff alleges is 9.76 miles from plaintiffs Brock-port office.[1] Upon presentation of this issue, plaintiffs board of directors refused to waive the covenant contained in defendant’s employment agreement. Plaintiff alleges that irreparable damage would be caused if defendant is allowed to violate the terms of the employment agreement and open a practice within the 10-mile radius, because plaintiff would lose patients to her new practice.
Defendant states that she is willing to stipulate that she will not advertise in the Brockport area “at all prior to the expiration of the non-compete.” (Affidavit of E. Blasco 11 8.) Defendant has further represented that she has “no intention of attempting to draw any former patients away” from plaintiff. (Id. 11 9.) To this end, defendant is also willing to stipulate that she will not “accept any referrals of Oak Orchard patients for the duration of the non-compete.” (Id.) Moreover, defendant alleges that Spencerport does not currently have a pediatrician practicing within its community. (Id. 1Í10.) Thus, defendant alleges that strictly enforcing this covenant “would serve to reduce patient access to convenient medical care in the Spencerport area, rather than protecting Oak Orchard from ‘unfair’ competition.” (Id.) As her proposed Spencerport office is “virtually” 10 miles away from Brockport, and allegedly over 20 miles away from Albion, defendant seeks vacatur of the TRO and denial of plaintiffs motion.
*930 In order for a party to obtain a preliminary injunction, the party must establish that (1) there is a likelihood of ultimate success on the merits, (2) that there is a prospect of irreparable harm if the relief is not granted, and (3) that the balance of equities favor the moving party. (Doe v Axelrod, 73 NY2d 748 [1988].) It is also a general rule that a preliminary injunction is a drastic remedy and should be issued cautiously. (Uniformed Firefighters Assn. of Greater N.Y. v City of New York, 79 NY2d 236 [1992].) The loss of patients has been deemed to constitute an irreparable injury. (See Albany Med. Coll. v Lobel, 296 AD2d 701, 703 [3d Dept 2002]; NYSARC, Inc., Chautauqua County Ch. v Saeed Syed, M.D., P.C., 192 Misc 2d 772, 774 [Sup Ct, Chautauqua County 2002] .)[2]
Accordingly, I turn to the likelihood of success issue. “[A] likelihood of ultimate success must not be equated with a final determination on the merits.” (Time Sq. Books v City of Rochester, 223 AD2d 270, 278 [4th Dept 1996]; see also, Bingham v Struve, 184 AD2d 85 [1st Dept 1992].) Here, plaintiff must establish a likelihood that it will ultimately prevail on its claim that the employment agreement containing the restrictive covenant is enforceable.
Under New York law, “negative covenants restricting competition are enforceable only to the extent that they satisfy the overriding requirement of reasonableness.” (Reed, Roberts Assoc. v Strauman, 40 NY2d 303, 307 [1976].) “An employee agreement not to compete will be enforced only if ‘it is reasonable in time and area, necessary to protect the employer’s legitimate interests, not harmful to the general public and not unreasonably burdensome to the employee.’ ” (Scott, Stackrow & Co., C.P.A.'s, P.C. v Skavina, 9 AD3d 805, 806 [3d Dept 2004].) This general limitation of reasonableness “applies equally” to a “covenant given by an employee . . . whe[re] he quits his employ.” (Purchasing Assoc. v Weitz, 13 NY2d 267, 272 [1963].)
As the Court of Appeals has observed, “in Reed, Roberts Assocs. (supra), we limited the cognizable employer interests under the first prong of the common-law rule to the protection against misappropriation of the employer’s trade secrets or of confidential customer lists, or protection from competition by a former employee whose services are unique or extraordinary.” (BDO *931 Seidman v Hirshberg, 93 NY2d 382, 389 [1999].) Because there is no allegation of misappropriation, we are dealing in this case only with plaintiffs interest in protecting itself from competition by a former employee whose services are claimed to be unique or extraordinary. Although the rule of reasonableness in cases involving professionals “giv[e] greater weight to the interests of the employer in restricting competition within a confined geographical area” because “professionals are deemed to provide ‘unique or extraordinary’ services” (id., quoting Reed, Roberts Assoc., 40 NY2d at 308), the Court of Appeals nevertheless requires strict scrutiny of “the particular facts and circumstances giving context to the agreement” in the learned profession cases. (93 NY2d at 390; see Gelder Med. Group v Webber, 41 NY2d 680, 683 [1977] [“(a)s with all restrictive covenants, if they (an agreement among physicians) are reasonable as to time and area, necessary to protect legitimate interests, not harmful to the public, and not unduly burdensome, they will be enforced”]; Karpinski v Ingrasci, 28 NY2d 45, 49 [1971] [“in some instances, a restriction not to conduct a profession or a business in two counties or even in one, may exceed permissible limits”].) Accordingly, even though an agreement is reasonable as to time and area, as assuredly this one is, there is no per se rule of reasonableness arising just because it is a physician’s unique or extraordinary services that are involved; a court must still scrutinize whether the covenant, on the facts presented, is being legitimately employed to protect plaintiff’s legitimate interests, would not be harmful to the public, and would not be unduly burdensome to the defendant. (BDO Seidman, 93 NY2d at 391 [the Karpinski and Gelder Med. Group “precedents do not obviate the need for independent scrutiny of the anti-competitive provisions of the . . . (employment) (a)greement under the tripartite common-law standard”].)[3]
*932 Accordingly, because “the only justification for imposing an employee agreement not to compete is to forestall unfair competition,” and because “a former employee may be capable of fairly competing for an employer’s clients by refraining from use of unfair means to compete,” where “the employee abstains from unfair means in competing for those clients, the employer’s interest in preserving its client base against the competition of the former employe [e][4] is no more legitimate and worthy of contractual protection than when it vies with unrelated competitors for those clients.” (Id.)
With this in mind, I turn to whether, on the facts presented, enforcement of the agreement will serve the legitimate interests of the plaintiff. No one suggests that defendant acquired any confidential or proprietary information while employed at Oak Orchard which might aid her or give her a competitive advantage in the proposed Spencerport practice, nor is it alleged that defendant has any information or peculiar relationships acquired during the course of her few years of employment with plaintiff which defendant appropriated and might exploit to unfair advantage in her proposed pediatric practice. (BDO Seidman, 93 NY2d at 391-392, 392 n 2 [whether the “employee has been enabled to share in the goodwill of a client or customer which the employer’s over-all efforts and expenditures created”].) Nor does it appear (at least plaintiff does not allege) that defendant will share in any customer (i.e., patient) supply network peculiarly developed or enjoyed by plaintiff in its practice akin to the small referral networks from primary health providers *933 which motivated the Court of Appeals rulings in Karpinski and Gelder Med. Group.
It is to be emphasized that the “contexts of the agreements not to compete [upheld] in Karpinski and Gelder Medical Group” was that “the former associate [physician] would have been in direct competition with the promisee-practitioner for referrals from a narrow group of primary health providers in a rural geographical market for their medical or dental practice specialty.” (BDO Seidman, 93 NY2d at 390-391 [emphasis supplied].) In this case, the plaintiff’s general practice, and defendant’s proposed pediatric practice, are not alleged to depend upon referrals from a narrow group of primary health providers, nor does it appear that they depend in Spencerport or Brockport on a strictly rural patient base, those communities having rapidly expanded in recent years as part of metropolitan Rochester suburbia. Thus, both plaintiff’s general practice, which it asserts is geared to a specialized migrant population, and defendant’s proposed pediatric practice (which is not stated to be specialized to a particular population base), both draw (or will draw) upon the general public and referrals from a plethora of primary care and family care practices in the area (if plaintiffs own submissions on the point are credited). Accordingly, extending the anticompetition agreement to clients or patients drawn to defendant’s proposed pediatric practice in Spencerport, particularly given the assurances defendant has given concerning plaintiffs existing patients, whether served by her or not, and her promise not to advertise in Brockport, “would constitute a restraint ‘greater than is needed to protect’ th[e] legitimate interests” of plaintiff. (BDO Seidman, 93 NY2d at 392, quoting Restatement [Second] of Contracts § 188 [1] [a].)
Finally, defendant establishes by admissible evidence, i.e., physician affidavits based on personal knowledge, that she would be the only pediatrician in Spencerport. Plaintiffs proof to the contrary pointed to the availability in the area of a great many “family practices,” but ultimately left defendant’s proof on the point unimpeached. In such circumstances, the “third prong of the common-law test, injury to public interest” (BDO Seidman, 93 NY2d at 394), is implicated. Ultimately, this consideration should prevent enforcement of the restrictive covenant on the authority of Lowe v Reynolds (75 AD2d 967 [3d Dept 1980]; Prime Med. Assoc., P.C. v Ramani, 5 Misc 3d 311, 314 [Sup Ct, Greene County 2004]; Primary Care of E.N.Y., *934 M.D. P.C. v Goodin, NYLJ, Apr. 11, 1996, at 29, col 5 [Sup Ct, Kings County]; cf., Gelder Med. Group, 41 NY2d at 685; Albany Med. Coll, v Lobel, 296 AD2d 701, 702 [3d Dept 2002]; Bollengier v Gulati, 233 AD2d 721 [3d Dept 1996]). In any event, the proof presented on this motion concerning the shortage of pediatricians in Spencerport on the public interest issue militates strongly in favor of denying the requested preliminary injunction. (Lowe v Reynolds, supra.)
One other factor militating in favor of not enforcing this agreement is that “plaintiff, from a superior bargaining position, required defendant to sign the employment agreement upon hiring her and thereafter as a condition of continued employment.” (Scott, Stackrow & Co., C.P.A.’s, P.C. v Skavina, 9 AD3d at 807.) “There has been no showing that, in exchange for her signing the agreement, defendant enjoyed a fiduciary relationship, a position of increased responsibility within the firm or any other significant benefit beyond continued employment.” (9 AD3d at 807-808.) For these reasons, even partial enforcement would be inappropriate. (Cf., BDO Seidman, 93 NY2d at 394-395.)
Conclusion
On the papers submitted, the court concludes that plaintiff has not shown that, in the circumstances, defendant will “use unfair means to compete” by opening her pediatric practice in Spencerport. (BDO Seidman, 93 NY2d at 391.) Because plaintiff fails to show that defendant is in a position to use any means of unfair competition described in the cases as worthy of protection (93 NY2d at 391-392), and because the context of this agreement is considerably different than those upheld in Karpinski and Gelder Med. Group, plaintiffs “interest in preserving its client base against the competition of the former employe [e] is no more legitimate and worthy of contractual protection than when it vies with unrelated competitors for those clients.” (93 NY2d at 391.)
Accordingly, the motion is denied. “However, in view of the actual competition which does result from a denial of the preliminary injunction, . . . [the case] is ordered ... to trial as a preferred matter.” (Seaman v Gines, 83 AD2d 667, 667 [3d Dept 1981].)

. Defendant concedes that this was calculated over road. Plaintiff contends that the proposed Spencerport office is under eight miles from the Brockport office of plaintiff, calculated as the crow flies. (See affidavit of D. Fisher If 22.)

. Compare, outside the context of medical services, D&W Diesel v McIntosh, 307 AD2d 750, 751 (4th Dept 2003) (“because the non-competition agreement is for a finite period, i.e., 18 months, any loss of sales occasioned by the allegedly improper conduct of defendant can be calculated”).

. It would be odd if Karpinski and Gelder Med. Group were read otherwise, i.e., to give noncompetition agreements otherwise reasonable in time and geographical scope broad deference. The cases in the learned profession context draw upon, for example, professional ethics codes for guidance. (BDO Seidman, 93 NY2d at 390 n 1.) Noncompete agreements among lawyers are prohibited by Code of Professional Responsibility DR-108 (a) (22 NYCRR 1200.13 [a]), and the courts apply a per se rule of nonenforcement. (Cohen v Lord, Day & Lord, 75 NY2d 95, 98-99 [1989].) The American Medical Association (AMA) “discourages any agreement [between physicians] which restricts the right of a physician to practice medicine for a specified period of time or in a specified area upon termination of an employment, partnership, or corporate agreement.” (AMA Code of Medical Ethics, Ops on Professional Rights and Responsibilites, Policy No. E-9.02 *932 [“Restrictive Covenants and the Practice of Medicine”].) The “virtually unanimous view of the courts respecting the validity of covenants between or among physicians” is that these agreements are not “per se unlawful” and that courts should not “elevate the American Medical Association’s ‘discouragement’ of such covenants to the same level as the outright ban that exists respecting such covenants between attorneys.” (6 Richard A. Lord, Williston on Contracts § 13.6, at 369-370 [4th ed 1995].) Unlike the accountant situation in BDO Seidman, which had no ethical guidelines on the subject (93 NY2d at 390 n 1), the AMA’s ethical discouragement of such agreements is only one step away from the proscription of DR 2-108 (a) in the attorney context. BDO Seidman makes clear, therefore, that strict scrutiny of such contracts is required, notwithstanding the “deference” accorded to them by Karpinski and Gelder Med. Group.

. In the Official Reports the word is “employer,” but does not make sense thus written. The sentence in the Court’s opinion quoted above has been quoted elsewhere using the word “employee.” (David L. Gregory, Courts in New York Will Enforce Non-Compete Clauses in Contracts Only if They are Carefully Contoured, 72 NY St B J 27, 32 [2000]; Joseph E. Bachelder, III, Executive Compensation, Restrictive Covenants: ‘BDO Seidman’ Case, NYLJ, Aug. 30, 1999, at 3, col 1.) It makes no sense otherwise. [Editor’s note: The Official Reports version of 93 NY2d 382 has been corrected.]