## In re WORLD TRADE CENTER DISASTER SITE LITIGATION.

### In the Matter of Bonus and Contingent Payments.

### No. 21 MC 100(AKH).

United States District Court, S.D. New York.

Signed Jan. 16, 2015.

Andrew John Scholz, James Bruce Eisenberg, Judith Pearl Falk, Thomas A.

Egan, Flemming Zulack Williamson Zauderer, LLP, Gregg Scott Scharaga, Havkins Rosenfeld Ritzert & Varriale, LLP, New York, NY, for World Trade Center Disaster Site Litigation.

## ORDER REGULATING DISTRIBUTIONS TO TIER IV PLAINTIFFS AND FIXING ATTORNEYS' FEES

ALVIN K. HELLERSTEIN, District Judge:

I write to regulate the last stage of this extraordinary litigation, following the remand of the Court of Appeals. *See In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114 (2d Cir.2014). This Order addresses three issues: (1) the calculation of the amount scheduled to be disbursed to Tier IV Plaintiffs on January 20, 2015 ("January 2015 Disbursement"), and whether reserves for attorneys' fees withheld from prior disbursements should be included in that amount; (2) the appropriate fee, if any, to which plaintiffs' counsel is entitled for remaining work related to the Bonus Payment and Contingent Payments; and (3) the procedures to govern the January 2015 Disbursement. I have received submissions and heard argument incident to making the following rulings.

## I. Background

### A. Prior Proceedings

In June 2010, this mass tort litigation was settled and approved. *See* Order Approving Modified and Improved Agreement of Settlement, 21–mc–100, ECF No. 2091 (S.D.N.Y. June 23, 2010). The base settlement amount was $625 million. *See* Settlement Process Agreement, as Amended ("SPA") § II.A. In addition to this base amount, the SPA provided for a system of "Contingent Payments" and a "Bonus Payment," payable if certain conditions were

satisfied. The Bonus Payment was to be paid if more than 95 percent of the approximately 10,000 plaintiffs opted into the settlement. *See id.* § VI.E. Contingent Payments were to be paid if, in each of the five years following settlement, fewer than a designated number of new cases were filed. *See id.* § IV.C. The Bonus Payment could aggregate up to approximately $62.5 million, depending on the rate of opt-ins exceeding 95 percent. The Contingent Payments could aggregate up to $25 million, depending on the number of new cases filed below the designated threshold. Thus, the total of Bonus and Contingent Payments, if paid at a rate of 100 percent, could increase the total settlement from $625 million to $712.5 million. Furthermore, the Bonus and Contingent Payments were payable to only the Tier IV Plaintiffs, the group considered most severely injured because of their work at the World Trade Center site after 9/11. The SPA provided that plaintiffs' counsel was entitled to fees amounting to 25 percent of the base settlement amount, the Bonus Payment, and the Contingent Payments. *See* SPA § II.G.

On July 26, 2010 and August 3, 2010, this Court conducted town-hall meetings in Staten Island and in Queens to address the concerns of plaintiffs eligible to opt into the SPA. In addition, on two evenings in November 2010, the Special Masters made themselves available, with counsel, to answer plaintiffs' questions. The deadline for plaintiffs to opt into the SPA was November 16, 2010. On November 19, 2010, the Allocation Neutral informed the Court that more than 95 percent of the eligible plaintiffs had accepted the SPA. I accepted the Allocation Neutral's report and the settlement became effective.

Of the 520 eligible plaintiffs who chose not to settle their cases under the SPA, the vast majority had not made an affirmative decision whether to do so because they had ceased to communicate with their counsel. For this reason, I appointed a Special Counsel, Michael Hoenig of Herzfeld & Rubin, P.C., to speak with all plaintiffs who had ceased communication with their counsel in order to ascertain if they wished to settle, proceed with the litigation, or voluntarily dismiss their case. Plaintiffs were to be advised that if they refused to choose, their cases would be involuntarily dismissed. *See* Order Appointing Special Counsel, 21–mc–100, ECF No. 2257 (S.D.N.Y. Nov. 24, 2010). As a result of the Special Counsel's efforts, 44 more plaintiffs opted into the SPA; 31 opted to continue their cases; and 47 chose to voluntarily dismiss their cases. *See* Order Accepting Report of Special Counsel and Providing for Effectiveness of Settlement, 21–mc–100, ECF No. 2269 (S.D.N.Y. Dec. 30, 2010). 409 plaintiffs failed to respond to the Special Counsel's several inquiries, and were dismissed involuntarily by the Court for failure to prosecute. *See* Order Dismissing Cases for Failure to Prosecute, 21–mc–100, ECF No. 2268 (S.D.N.Y. Dec. 30,2010).

The SPA provided that plaintiffs who *voluntarily* dismissed their cases would not be counted in the list of eligible plaintiffs. However, the SPA did not provide for the effect of *involuntary* dismissals on the eligible plaintiff list. *See* SPA § VI.A. Defendant New York City and the WTC Captive Insurance Co. ("WTC Captive"), established by FEMA to insure the City of New York against 9/11–related liability, argued that I should not have eliminated from the list of eligible plaintiffs the 409 plaintiffs whose cases I had involuntarily dismissed. The City and WTC Captive asserted that, counting these 407 plaintiffs in the denominator, the proper opt-in rate was approximately 96%, calling for a $12.5 million Bonus Payment. Rejecting that argument, and noting that "[t]here is no

legal distinction, in consequence or intent, between a voluntary and an involuntary dismissal," I held that plaintiffs whose claims were involuntarily dismissed were not to be included in the list of eligible plaintiffs. Summary Order Denying Objection to Bonus Payment at 8, 21–mc–100, ECF No. 2523 (S.D.N.Y. Sept. 8, 2011); *see also In re World Trade Ctr. Disaster Site Litig.*, 834 F.Supp.2d 184 (S.D.N.Y. 2011) (expanding and explaining that order). The City and WTC Captive appealed my order.

As a result of the additional opt-ins and dismissals following the work of the Special Counsel, 10,087 plaintiffs opted into the SPA (the ratio numerator), the total number of eligible plaintiffs was reduced to 10,147 (the ratio denominator), and the resulting percentage of settling plaintiffs to all those eligible came to approximately 99.4 percent. I ordered the WTC Captive to pay a Bonus Payment in the amount of $55 million. *See* Summary Order Denying Objection to Bonus Payment, 21–mc–100, ECF No. 2523 (S.D.N.Y. Sept. 8, 2011).

As to Contingent Payments, I ruled that the count of newly-filed cases should include only pending cases on the record date (January 5, 2012), and not those that had been withdrawn and dismissed soon after they had been filed. Thus, I ruled that only 84 cases should have been counted, well below the 220–case threshold, and ordered that the First Contingent Payment be paid in the full amount of $5 million. *See* Order and Opinion Requiring Contingent Payments to Be Paid to Settling Plaintiffs ("Contingent Payments Order"), No. 21–mc–100, ECF No. 2858 (July 13, 2012). The City and WTC Captive argued that the withdrawn cases were "newly-filed" under the SPA, and appealed my order.

In addition, I made two rulings regulating plaintiffs' attorneys' fees. First, I held

that plaintiffs' counsel was not entitled to a percentage fee of the Bonus Payment because, among other reasons, plaintiffs' counsels' compensation from the base settlement with several categories of defendants—approximately $187 million—was amply sufficient. *See* Summary Order Denying Objection to Bonus Payments, No. 21–mc–100, ECF No. 2523, at 12 (Sept. 8, 2011). Citing similar concerns, I also held that plaintiffs' counsel was not entitled to a percentage of the Contingent Payments. *See* Contingent Payments Order at 12–13. I also noted ethical concerns that the acceptance of a fee contingent upon a refusal to bring future cases would discourage future representation. *See id.* Plaintiffs' counsel appealed both rulings.

**B. Court of Appeals' Decision**

On appeal, the Court of Appeals reversed in part, affirmed in part, and vacated and remanded in part. *See In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114 (2d Cir.2014). *First*, with respect to the Bonus Payment, the Court held that the SPA was ambiguous as to whether plaintiffs whose claims were *involuntarily* dismissed should be counted in the total number of eligible plaintiffs. *See id.* at 123–24. Accordingly, the Court remanded the issue for consideration of extrinsic evidence as to the parties' intent.

*Second*, with respect to the Contingent Payments, the Court reversed my ruling and held that the plain language of the SPA provided that "newly-filed claims" included those that had been filed but were no longer pending on the relevant date. *See id.* at 125–26. Accordingly, the Court of Appeals held that the WTC Captive did not owe the First Contingent Payment.

*Third*, noting the inherent authority of District Courts to supervise attorneys' fee arrangements, the Court of Appeals affirmed my ruling that plaintiffs' counsel

was not entitled to any percentage of the Bonus Payment. *See id.* at 126–28 ("[C]ourts may review a fee arrangement for reasonableness even if it has not been challenged by the parties."). However, because the Court of Appeals held that the WTC Captive did not owe a First Contingent Payment, it did not reach my ruling that plaintiffs' counsel was similarly not entitled to a percentage of the Contingent Payments.

### C. Prior Disbursements to the Tier IV Plaintiffs

On January 16, 2013, the WTC Captive paid to plaintiffs a Second Contingent Payment of $3.8 million based upon the number of newly-filed claims, less a reserve for attorneys' fees of 25 percent claimed by plaintiffs' counsel pending appeal. On February 3, 2014, the WTC Captive paid to plaintiffs a Third Contingent Payment in the maximum amount of $5 million, based upon the number of newly filed claims, less a reserve for plaintiffs' claimed attorneys' fees of 25 percent. The WTC Captive also disbursed to plaintiffs the undisputed portion of the Bonus Payment of $12.5 million, less a similar reserve. The reserve set aside by the WTC Captive was $949,981.07 (Second Contingent Payment), *plus* $1,197,995.09 (Third Contingent Payment), *plus* $3,124,945.36 (undisputed Bonus Payment). The total of all withholdings was $5,272,921.52.

## II. Discussion

Throughout this litigation, I have exercised substantial supervisory authority pursuant to Rule 16 of the Federal Rules of Civil Procedure. My reason for doing so included, first, the fact that the settlement was negotiated without the authorization of any of the 10,000 plaintiffs, and made in the aggregate rather than with respect to individual cases, thus resembling a class settlement rather than a collection of individual settlements; and, second, that the potential for conflicts among plaintiffs, and between plaintiffs and their counsel, required such supervision to ensure fairness amongst all plaintiffs.

Furthermore, Congress consolidated all litigation in the United States District Court for the Southern District of New York, and gave this Court exclusive jurisdiction over all cases arising from the terrorist-related aircraft crashes of September 11, 2001. *See* Air Transportation Safety and System Stabilization Act ("ATSSSA") § 408(b)(1), (3). In order to assure equal and just treatment, among defendants, among plaintiffs, and among all plaintiffs and defendants, this Court has both the jurisdiction and responsibility to manage the litigation, under Rule 16 and the ATSSSA, in a manner that is fair and reasonable. With this responsibility in mind, I turn now to the three issues addressed by this Order.

### A. Disbursements to Tier IV Plaintiffs Due January 20, 2015

The disbursements to the Tier IV Plaintiffs scheduled for January 20, 2015 are to include the following sums:
- a) $5,000,000 constituting the Fourth Contingent Payment;
- b) $5,272,921.52 constituting the total attorneys' fee reserves withheld from previous disbursements.

The parties agree that the Fourth Contingent Payment in the maximum amount of $5 million is due to the Tier IV Plaintiffs on January 20, 2015. For the following reasons, I now rule that Plaintiffs' counsel is not entitled to any fee on the previously disbursed Contingent Payments or the previously disbursed $12.5 million Bonus Payment. This extends the same ruling affirmed by the Court of Appeals with respect to the Bonus Payment.

As previously stated in my order dated July 13, 2012, *see* Contingent Payments Order at 13, it is unprofessional for a law firm to accept a payment conditioned upon its refusal to represent future clients who seek its expertise. *See* N.Y. R. Prof. Conduct 5.6(a); *Cohen v. Lord, Day & Lord*, 75 N.Y.2d 95, 108, 551 N.Y.S.2d 157, 550 N.E.2d 410 (1989) ("Restrictions which somehow interfere with or restrict the freedom of present or future clients to hire and fire lawyers are what the rule aims to prohibit."). Furthermore, it is improper for an adverse party to make such a payment in the hope of decreasing its own liability. The Contingent Payment provision of the SPA incentivizes lawyers to refuse new clients who seek their expertise by providing that additional payments and proportionate attorneys' fees are contingent on an absence of future cases. *See* SPA § IV.C. Accordingly, I rule that plaintiffs' counsel is not entitled to fees with respect to the Second or Third Contingent Payments and instruct the Allocation Neutral to include the sums previously withheld ($2,147,976.16) to be distributed to the Tier IV Plaintiffs on January 20, 2015 or as soon thereafter as is reasonably practicable. My ruling with respect to the Contingent Payments thus aligns with my prior ruling with respect to the Bonus Payment.

As I held in my order dated September 8, 2011, *see* Summary Order Denying Objection to Bonus Payment, 21–mc–100, ECF No. 2523, at 12 (Sept. 8, 2011), and as affirmed by the Second Circuit, *see In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114 (2d Cir.2014), plaintiffs' counsel is not entitled to fees with respect to the previously disbursed portion of the Bonus Payment. The fee already paid to plaintiffs' counsel, based on a 25 percent contingency of settlements totaling $725,000,000, amounts to approximately $187,500,000. That amount sufficiently rewards plaintiffs'

counsel for their representation. I instruct the Allocation Neutral to include the sums previously withheld ($3,124,945.36) to be distributed to the Tier IV Plaintiffs on January 20, 2015, or as soon thereafter as is reasonably practicable.

**B. Calculation of the Outstanding Bonus Payment and Attorneys' Fees for Prospective Representation**

The Court of Appeals has remanded the issue of whether the parties' intended that involuntary dismissals be counted in the list of eligible plaintiffs. It is reasonable for counsel, whose negotiations created the SPA, to extend those negotiations to this issue, which may be resolved without further litigation. Counsel for the WTC Captive and counsel for plaintiffs already have begun such negotiations. It is reasonable and very much in the interests of plaintiffs that their counsel be compensated for their work made necessary by the remand of the Court of Appeals.

District Courts have broad supervisory power over attorneys' fee arrangements. *See Alderman v. Pan Am World Airways*, 169 F.3d 99, 102 (2d Cir.1999). Because further activities on the part of plaintiffs' liaison counsel with respect to the Bonus Payment are required, a fee should be set. The structure should begin with a fixed amount to reflect the expected amount of administrative work; continue with lower contingent rates reflecting the possibility that a settlement may yield relatively low amounts; and graduate to higher rates to encourage dedicated, quality effort to seek a settlement, or determination, at higher values. As with contingency fees generally, the structure provides incentives to counsel, and aligns their interest with the interest of their several thousands of clients. The fee structure should contemplate the possibility that a satisfactory set-

tlement cannot be achieved and further litigation in the form of an evidentiary hearing and an appeal might be necessary, further justifying compensation. Accordingly, I authorize the following fee structure:

- $100,000 flat fee for recovery up to $7.5 million; *plus*
- 10% of any recovery between $7.5 and $12.5 million; *plus*
- 15% of any recovery between $12.5 million and $15 million; *plus*
- 25% of any recovery between $15 million and $20 million; *plus*
- 33 1/3% of any recovery above $20 million

In addition, plaintiffs' counsel will be responsible for cooperating with the Allocation Neutral in distributing the payments due to the Tier IV Plaintiffs in January 2015 and the Fifth Contingent Payment, if any, due January 2016. Such work is likely to include certain administrative duties. In the event that a plaintiff has recently died or filed for personal bankruptcy, such work may also require involvement with probate and bankruptcy courts. Such efforts should be reasonably compensated. A flat fee of $250,000 plus reasonable expenses, less any fees payable to the Allocation Neutral is appropriate. This fee is subject to review and revision if, in the light of experience, it proves not to be adequate.

### C. Procedures to Govern the January 2015 Disbursement

Previous disbursements to plaintiffs have been governed by the procedures provided in my order of June 25, 2010, Allocation Neutral Protocol 4 ("ANP–4"), and prior Allocation Neutral Protocols (together with ANP–4, "ANPs"). *See* Protocol for Regulating Attorneys' Fees and Allowances of Expenses, Nos. 21–mc–100, 21–mc–102, 21–mc–103, ECF No. 2111 (S.D.N.Y. June 25, 2010). The parties have now jointly submitted a proposed protocol to govern the January 2015 Disbursement, which is annexed hereto, and supplements the prior procedures, which remain in effect. I accept the parties' proposed protocol with the exception of the following amendments.

1. In the event that a payment to a plaintiff is undeliverable (*e.g.*, a check is returned or fails to be deposited), the court-appointed Temporary Receiver for Napoli & Bern, LLP shall ensure that such funds are not commingled with any other funds or accounts controlled by Napoli & Bern, LLP. The Temporary Receiver shall keep an accounting of all such undisbursed funds. If any funds are determined undeliverable, an application should be made to this Court for determination of how such funds should be disbursed.

2. Following the disbursement of the Fifth Contingent Payment, if any, scheduled for January 2016, Worby Groner Edelman & Napoli Bern, LLP shall file with the Court a final accounting, providing the disposition for all funds disbursed pursuant to the SPA. It should describe the amount distributed to each plaintiff and, in the event such funds were not deliverable to a plaintiff, it should describe the current location of such funds. The Allocation Neutral shall review the final accounting, audit expenses and distributions to the extent it, or the Court, considers appropriate, and confirm its accuracy prior to filing with the Court.

3. All plaintiffs' counsel should submit expenses, if any, to the Allocation Neutral by January 22, 2015.

4. The Allocation Neutral should draft payment instruction report to be circulated to all counsel as soon thereafter as is reasonably practicable.

5. Plaintiffs' counsel is not entitled to 15 percent contingency fee with respect to the Contingent Payments. The appropriate fee structure is provided in this Order.

## III. Conclusion

This litigation, unprecedented in scope and complexity, has presented countless legal and administrative obstacles over the past 12 years. Nonetheless, the parties have achieved a settlement resulting in an unparalleled degree of satisfaction on the part of all involved. In issuing this Order, it is the aim of the Court to maintain this record of success and finish the litigation in a manner that is equally fair and reasonable.

Plaintiffs' counsel's motion is DENIED as described above. The Clerk shall mark the motion (Doc. No. 3182) terminated. SO ORDERED.

In addition to the procedures outlined the court's June 25, 2010 Protocol for Regulating Attorneys' Fees and Allowance of Expenses and Allocation Neutral Protocol ("ANP") 4, the following procedures shall be followed for the distribution of the monies due under Contingency Payments 2, 3 and 4:

**Procedures for clients of Worby Groner Edelman & Napoli Bern, LLP:**

- The court-appointed Temporary Receiver for Napoli Bern & Associates, LLP will oversee receipt, custody, and dispersal of January 2015 FSA payments allocated to clients of Worby Groner Edelman & Napoli Bern, LLP.

- The January 2015 FSA payments will be made into Plaintiffs' Counsel's general trust account for receiving personal injury settlement funds ("Account A–General Account") and overseen by the Temporary Receiver and the Allocation Neutral pursuant to the court's June 25, 2010 Protocol for Regulating Attorneys' Fees and Allowance of Expenses and Allocation Neutral Protocol ("ANP")–4. The parties will continue to follow ANP–4, which calls for deposits of Plaintiffs' funds in the bank accounts described herein, provision of account statements to the Allocation Neutral, and the Allocation Neutral's reconciliation and audit of those accounts and any expenses. The Temporary Receiver will receive the account statements at the same time as the Allocation Neutral.

- The Temporary Receiver will confirm oversight of the January 2015 FSA payments in a letter to the court, with copies to the Allocation Neutral and WTC Captive.

- Worby Groner Edelman & Napoli Bern, LLP will submit expenses to the Allocation Neutral by January 9, 2015, with approval of the Temporary Receiver.

- The parties will continue to follow past practice as authorized by the ANPs, i.e.:

  - Allocation Neutral prepares draft payment instruction report stating the amount allocated to each settling plaintiff represented by Worby Groner Edelman & Napoli Bern, LLP, and circulates to Paul Napoli, Christopher LoPalo, and Temporary Receiver;

  - Counsel and Temporary Receiver provide comments/corrections, if any, to Allocation Neutral;

- Allocation Neutral conveys final payment instruction report to WTC Captive;
- WTC Captive wires funds to Account A per the final payment instruction report;
- Worby Groner Edelman & Napoli Bern, LLP deducts Allowed Expenses and then transfers all net claimant proceeds to "Account B–Claimant Disbursement Account."
- Worby Groner Edelman & Napoli Bern, LLP distributes payments to its clients from Account B per final payment instruction report.
- The Temporary Receiver will confer with the Allocation Neutral and confirm proper distribution of payments to clients of Worby Groner Edelman & Napoli Bern, LLP.
- Worby Groner Edelman & Napoli Bern, LLP will file with the court a report summarizing the process and confirming payments in conformance with the FSA and the ANPs.

### Procedures for clients of all other plaintiffs' counsel:

- Follow past practice as authorized by ANPs, i.e.:
  - Plaintiffs' counsel submit expenses, if any, to the Allocation Neutral by January 9, 2015;
  - Allocation Neutral prepares draft payment instruction report stating the amount allocated to each settling plaintiff, and circulates to all counsel (after pre-approval by counsel to WTC Captive and Plaintiffs' Liaison Counsel);
  - Counsel given an opportunity to provide comments/corrections, if any, to Allocation Neutral;
  - If no comments or corrections received within the specified period,

Allocation Neutral conveys final payment report to WTC Captive;
- WTC Captive wires funds to plaintiffs' counsel per final payment instruction report;
- Plaintiffs' counsel distributes payments to their clients per final payment instruction report.
- Allocation Neutral to file with the court a report summarizing the process and confirming payments in conformance with the FSA and the ANPs.

### Payment of attorneys' fees to plaintiffs' counsel:

- Plaintiffs' Counsel would be paid the updated and further voluntarily reduced 15% contingency fees from the Contingent Payments.
- These payments will be calculated by the Allocation Neutral pursuant to the methodology previously deemed fair, reasonable, adequate, and just pursuant to the June 25, 2010 Protocol Regulating Attorneys' Fees and Allowances of Expenses.
- Any payments of attorneys' fees are paid pursuant to the Allocation Neutral final payment instruction report;

SO ORDERED.